# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES HALL and**<br>**NANCI HALL, h/w**<br>361 Cranberry Run Road<br>Zion Grove, PA 17985<br><br>v.<br><br>**SIG SAUER, INC.**<br>72 Pease Boulevard<br>Newington, NH 03801 | **CIVIL CASE NUMBER:**<br><br>**Case 3:23-cv-00978-KM** |

**PLAINTIFFS JAMES HALL AND NANCI HALL'S**
**THIRD SET OF INTERROGATORIES TO DEFENDANT SIG SAUER**

Please take notice that Plaintiffs, by and though their attorneys, Saltz Mongeluzzi & Bendesky P.C., request that Defendant answers the following Interrogatories within thirty (30) days pursuant to Rules 26 & 33 of the Federal Rules of Civil Procedure.

Please take further notice that this request should be regarded as continuing and requiring prompt supplemental production in the event that any of the requested documents are located, additional responsive documents are received, or documents falling within the described category are otherwise obtained at any time prior to trial.

**DEFINITIONS**

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. Except as the context may otherwise require, the following definitions shall apply to these Interrogatories:

1. "Lawsuit" means this lawsuit with case number and caption above.

2. "You," "Your," "Defendant" or "SIG Sauer", means Defendant SIG Sauer, Inc. as well as its agents, servants, employees, and attorneys, and persons acting for or on its behalf.

3. "Plaintiff" means James Hall and "Plaintiffs" means Mr. Hall and his wife, Nancy.

4. "Subject Incident" means the incident during which the Plaintiff's P320 model pistol discharged without a deliberate trigger pull.

5. "Subject Pistol" means the Sig Sauer P320 model pistol that discharged during the Subject Incident.

6. "Subject Holster" means the holster for the Subject Pistol which may have been in use at the time of the Subject Incident.

7. "P320" means the SIG P320 Pistol and any and all of its variants including, but not limited to the full-size, compact, carry, x-compact, sub-compact, nitron, x-series, v-tac, or any other non-military variant of the P320.

8. "Tabbed Safety Trigger" means the trigger option that Sig Sauer included in its original design of the P320 and is referenced in marketing materials for the P320 in which a tab or blade protruding from the middle of the trigger must be depressed for trigger actuation.

9. "Unintended Discharge" means any time a gun discharges a bullet and/or strikes the primer part of a cartridge, that was not specifically intended by the person in possession of the gun. The term Unintended Discharge shall include negligent discharge, unintentional discharge, uncommented discharge, and any situation where an individual alleges a gun fired a projectile without the possessor intending to.

10. "Drop Fire" means any time a gun is not in control of either hand, falls from any height and collides with the ground or an object and, immediately following the collision, the gun discharges a projectile and/or strikes the primer part of a cartridge.

11. "Law Enforcement Agency" means any local, state, or federal agency with any authority to enforce the law, including but not limited to sheriff's, police officers, detectives, customs and border patrol agents, park rangers, and prosecutors, or anyone else which law enforcement authority.

12. "Civilian" means any person who is not employed by or in the military or who is not employed by a Law Enforcement Agency.

13. "Identify" or "describe" means to provide a complete description sufficient to permit the interrogating party to locate and identify the subject matter of any request. When used in relation to any person, "Identify" or "describe" means to provide the full name, present or last known address, present or last known telephone number, employment, and current and former job titles if known; when used in relation to a place, "identify" or "describe" means to provide the complete address of any place; and when used in relation to an object or thing, "identify" or "describe" means to provide a complete, particular description of such object or thing, such as by date, type, location, source and physical description.

14. "Each" shall be construed as "each and every."

15. "Any" shall be construed as "all" and vice versa.

16. The use of singular form of any word includes the plural and vice versa.

17. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be outside of its scope.

## **INTERROGATORIES**

1. Identify the SIG Sauer sales representative(s) by name, email address, job title, and sales region, who sold the Subject Pistol to Plaintiff, and/or, if not directly sold to Plaintiff, also identify the SIG Sauer customer, distributor, or third party who purchased the gun from Sig Sauer before offering it for sale to Plaintiff.

**RESPONSE:**

2. Identify the date and manner in which SIG Sauer was first notified of the Subject Incident and what if anything Sig Sauer did in response to being notified of the Subject Incident.

**RESPONSE:**

3. State whether SIG Sauer interviewed or spoke with Plaintiff or any witnesses, employees or non-employees as part of an investigation as to the cause of the Subject Incident and identify the SIG Sauer personnel who conducted the interview(s) and the subjects interviewed.

**RESPONSE:**

4. Provide the names, email addresses and job titles for each employee of SIG Sauer ("Custodian") who was included on any emails containing Plaintiff's full name or last name, the Subject Pistol's serial number, or the Sig Sauer RMA number, and the dates ranges for those emails.

**RESPONSE:**

5. Identify all persons who performed work on Sig Sauer's "Tabbed Safety Trigger" that Sig Saur once promoted as an option on the P320, including with respect to its design, decision to implement the component as an option, and decision to stop offering the option.

**RESPONSE:**

6. Identify all of Sig Sauer's patent applications (drafts or submittals) for the Tabbed Safety Trigger, and all individuals involved and/or third parties involved in the research, development and testing of the Tabbed Safety Trigger.

**RESPONSE:**

7.      Did Sig Sauer photo document and/or video record any of its own drop testing, including but not limited to drop testing and/or jar-off testing of the P320 prior to and/or after offering it for sale to customers in the United States?

**RESPONSE:**

8.      Did Sig Sauer conduct any safety comparison, study and/or analysis between the P320 with a tabbed safety trigger and the P320 without a tabbed safety trigger? If so, please identify the scope and results.

**RESPONSE:**

9.      On what date did the U.S. Army notify Sig Sauer that its testing of the XM-17 and XM-18 revealed that, during drop testing in which an empty primed cartridge was inserted, the striker struck the primer causing a discharge, and who at Sig Sauer received this information?

**RESPONSE:**

10.     On what date did Sig Sauer communicate and/or provide to the U.S. Army its Engineering Change Protocol (ECP) to correct the drop fire deficiency the Army identified.

**RESPONSE:**

11.     For each statement and/or press release[1] published by Sig Sauer responding to allegations that the P320 was not drop safe and/or was responsible for an unintended discharge, provide the name and email address of the person or people responsible for drafting, reviewing, and/or approving the statement or press release.

**RESPONSE:**

---

[1] Examples of the statements or press releases sought are Sig Sauer's July 31, 2023 press release titled: "SIG SAUER Statement on Montville, CT Police Department Incident" and its August 4, 2017 statement beginning with "In response to social media rumors questioning the safety of the P320 pistol, a variant of which was selected by the U.S. government as the U.S. Army's Modular Handgun System (MHS), SIG SAUER, Inc. has full confidence in the reliability, durability and safety of its striker-fired handgun platform…."

12. Identify all documents, reports, marketing studies and/or market research performed regarding the inclusion of tabbed triggers on the P320.

**RESPONSE:**

13. Provide the date of the meeting and the attendees at the meeting at which time the decision was made to not produce or offer for sale the P320 with the Tabbed Safety Trigger option.

**RESPONSE:**

14. Has Sig Sauer ever sold a P320 with any type of trigger safety (tabbed, hinge, blade)? If so, identify all pistol model lines and the person or entity who purchased the P320 with a trigger safety, along with the serial numbers of those sold.

**RESPONSE:**

15. Identify the individual or individuals who approved the use of the marketing phrase "the P320 will not discharge unless you want it to" and the date range that Sig Sauer used the phrase.

**RESPONSE:**

16. Provide an organizational flow chart, which may include without limitation any and all branches or departments within Sig Sauer that involve the design, marketing, sales (both public and law enforcement), safety testing, legal, customer service, and executive decision making for the P320. For the sales division, the chart should include military, law enforcement, and civilian branches and the regional directors for each section.

**RESPONSE:**

17. Did Sig Sauer require distributors to send back P320s produced prior to August 2017, but not yet sold to consumers, to be modified pursuant to the voluntary upgrade program?

**RESPONSE:**

                                             **SALTZ MONGELUZZI & BENDESKY P.C.**
                                             Attorney for Plaintiffs

                         By:        */s/**Robert W. Zimmerman**, Esq.*
                                                    Robert W. Zimmerman, Esq.

MARCH 25, 2024