## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HALL and NANCI HALL, h/w : | |
| : | NO. 3:23-cv-00978-JFS |
| Plaintiffs, : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| SIG SAUER, INC., CABELA'S LLC, : | |
| AMERICAN SPORTSMAN HOLDINGS, : | |
| CO, BASS PRO SHOPS, INC., TMBC, LLC, : | |
| BASS PRO OUTDOOR WORLD, LLC, : | |
| CABELA'S INCORPORATED, CABELA'S, : | |
| CABELA'S WHOLESALE INC. : | |
| Defendant. : | |

### DEFENDANT SIG SAUER, INC.'S ANSWER AND
### AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT

Defendant SIG SAUER, INC. ("SIG"), through its undersigned counsel, hereby files its Answer and Affirmative Defenses to Plaintiffs' Amended Complaint [Dkt. 35], and respectfully submit as follows:

1.     SIG denies the allegations in Paragraph 1 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial.

2.     SIG denies the allegations in Paragraph 2 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial.

3.     SIG is without sufficient knowledge to either admit or deny the allegations in Paragraph 3 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial.

4.     SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 4 of Plaintiffs' Amended Complaint and therefore denies the same.

5.     SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 5 of Plaintiffs' Amended Complaint and therefore denies the same.

6.     SIG denies the allegation that the P320 pistol he purchased was dangerous or defective as alleged in Paragraphs 7 of Plaintiffs' Amended Complaint. The remaining allegations are directed at parties other than SIG and, therefore, no response to these allegations are required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 6 of Plaintiffs' Amended Complaint and therefore denies the same.

7.     SIG denies the allegation that the P320 pistol Plaintiff purchased was dangerous or required a recall as alleged in Paragraphs 7 of Plaintiffs' Amended Complaint. The remaining allegations are directed at parties other than SIG and, therefore, no response to these allegations are required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 7 of Plaintiffs' Amended Complaint and therefore denies the same.

8.     SIG denies the allegations in Paragraph 8 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial.

9.     SIG admits that Plaintiffs seek damages from SIG in this action, but SIG denies that it is liable to Plaintiffs under any theory.

## PARTIES[1]

10.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 10 of Plaintiffs' Amended Complaint and therefore denies the same.

11.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 11 of Plaintiffs' Amended Complaint and therefore denies the same.

---

[1] SIG is including the headings used in Plaintiffs' Amended Complaint for ease of reference. SIG expressly denies the truth of any allegations contained in such headings.

12.     SIG admits the allegations contained in Paragraph 12 of Plaintiffs' Amended Complaint.

13.     The allegations contained in Paragraphs 13 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 13 of Plaintiffs' Amended Complaint and therefore denies the same.

14.     The allegations contained in Paragraphs 14 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 14 of Plaintiffs' Amended Complaint and therefore denies the same.

15.     The allegations contained in Paragraphs 15 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 15 of Plaintiffs' Amended Complaint and therefore denies the same.

16.     The allegations contained in Paragraphs 16 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 16 of Plaintiffs' Amended Complaint and therefore denies the same.

17.     The allegations contained in Paragraphs 17 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To

the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 17 of Plaintiffs' Amended Complaint and therefore denies the same.

18.    The allegations contained in Paragraphs 18 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 18 of Plaintiffs' Amended Complaint and therefore denies the same.

19.    The allegations contained in Paragraphs 19 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 19 of Plaintiffs' Amended Complaint and therefore denies the same.

20.    The allegations contained in Paragraphs 20 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 20 of Plaintiffs' Amended Complaint and therefore denies the same.

## JURISDICTION AND VENUE

21.    The allegations contained in Paragraph 21 of Plaintiffs' Amended Complaint are questions of law which do not require a response from SIG. SIG respectfully refers all questions of law to this Honorable Court.

22.    SIG admits that it is a Delaware corporation with its principal place of business at 72 Pease Boulevard in Newington, New Hampshire 03801. Any remaining allegations are denied.

23.     The allegations contained in Paragraph 23 of Plaintiffs' Amended Complaint are conclusions of law to which no responsive pleading is required. To the extent a response is required, SIG denies same and demands strict proof thereof at the time of trial.

24.     The allegations contained in Paragraphs 24 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 24 of Plaintiffs' Amended Complaint and therefore denies the same.

25.     The allegations contained in Paragraphs 25 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 25 of Plaintiffs' Amended Complaint and therefore denies the same.

26.     The allegations contained in Paragraphs 26 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 26 of Plaintiffs' Amended Complaint and therefore denies the same.

27.     The allegations contained in Paragraphs 27 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 27 of Plaintiffs' Amended Complaint and therefore denies the same.

28.     The allegations contained in Paragraphs 28 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 28 of Plaintiffs' Amended Complaint and therefore denies the same.

29.     SIG denies that it is liable to Plaintiffs for any amount, but SIG does not dispute that the amount in controversy satisfies the $75,000 amount in controversy threshold.

30.     The allegations contained in Paragraph 30 of Plaintiffs' Amended Complaint are questions of law which do not require a response from SIG, but SIG is not challenging venue in this Court.

## GENERAL ALLEGATIONS

### I.     SIG SAUER

31.     SIG admits only that it designs and manufactures firearms rifles, which are sold to third-party distributors, dealers, and various law enforcement and governmental agencies throughout the United States and internationally. SIG denies the remaining allegations contained in Paragraph 31 of Plaintiffs' Amended Complaint as stated, including specifically the allegation that SIG "markets and sells its products directly and through dealers."

32.     SIG admits that it changed its name to SIG Sauer, Inc. in October 2007 and that its CEO is Ron J. Cohen. All remaining allegations in Paragraph 32 of Plaintiffs' Amended Complaint are denied.

33.     SIG denies the allegations in Paragraph 33 of Plaintiffs' Amended Complaint. The P320 model pistol does not discharge without trigger actuation and any suggestion to the contrary is patently false. However, just like every other firearm, the P320 model pistol is designed to fire if the trigger is pulled. By way of further response, multiple courts across the country have

6

dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without an intentional trigger pull because their claims had no merit whatsoever.

34.     SIG admits that it is aware of allegations of negligent discharges involving P320 pistols that were the result of an inadvertent trigger pull, either by the user's finger or a foreign object. The P320 model pistol does not discharge without trigger actuation and any suggestion to the contrary is patently false and has not been replicated. Just like every other firearm, the P320 model pistol is designed to fire if the trigger is pulled. Multiple courts across the country have dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without trigger actuation because such claims were unsupported and could not be replicated. Any remaining allegations in Paragraph 34 of Plaintiffs' Amended Complaint are denied and strict proof thereof is demanded at trial.

35.     SIG admits that it is aware of allegations of negligent discharges involving P320 pistols that were the result of an inadvertent trigger pull, either by the user's finger or a foreign object. The P320 model pistol does not discharge without trigger actuation and any suggestion to the contrary is patently false and has not been replicated. Just like every other firearm, the P320 model pistol is designed to fire if the trigger is pulled. Multiple courts across the country have dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without trigger actuation because such claims were unsupported and could not be replicated. Any remaining allegations in Paragraph 35 of Plaintiffs' Amended Complaint are denied and strict proof thereof is demanded at trial.

36.     The allegations contained in Paragraph 36 of Plaintiffs' Amended Complaint are questions of law which do not require a response from SIG. SIG respectfully refers all questions of law to this Honorable Court.

37.     SIG admits that Plaintiffs seek damages from SIG in this action, but SIG denies that it is liable to Plaintiffs under any theory.

38.     SIG admits that this matter involves a striker-fired pistol known as the P320 but denies all remaining allegations in Paragraph 38 of Plaintiffs' Amended Complaint as stated. SIG denies that the P320 model pistol is capable of discharging without trigger actuation. By way of further response, multiple courts across the country have dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without the trigger being pull because their claims had no merit whatsoever.

39.     SIG admits there have been prior complaints of a P320 pistol firing without a trigger pull, but specifically denies that the P320 model pistol can discharge without trigger actuation. In fact, multiple courts across the country have dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without the trigger being pulled because such claims were unsupported and could not be replicated. Any remaining allegations in Paragraph 39 of Plaintiffs' Amended Complaint are denied.

40.     SIG responds that the language quoted in Paragraph 40 is incomplete and not put in context. To the extent Plaintiffs are making any allegations in connection with the quoted language, SIG denies such allegations and further responds that the document speaks for itself and, therefore, no responsive pleading is required.

41.     Denied. The P320 model pistol is equipped with all necessary safety features, including multiple redundant internal safeties that prevent it from firing without trigger actuation. SIG specifically denies that the P320 can fire without trigger actuation. In fact, multiple courts across the country have dismissed – with prejudice – similar claims by individuals who alleged their P320 model pistols fired without the trigger being pulled because such claims were

unsupported and could not be replicated. Just like every other firearm, the P320 is designed to fire when the trigger is pulled.

42.    Denied. The P320 model pistol is equipped with all necessary safety features, including multiple redundant internal safeties that prevent it from firing without trigger actuation. SIG specifically denies that the P320 can fire without trigger actuation. SIG admits that under some circumstances of negligent handling, it is possible for a P320 pistol to discharge when dropped as SIG warned users in the P320 Owner's Manual:



⚠ **WARNING  – DROPPED PISTOL**

If dropped, the pistol may fire. Keep the chamber empty unless actually firing!

**ANY FIREARM MAY FIRE IF DROPPED**

43.    SIG admits there have been prior complaints of a P320 pistol firing when dropped, as SIG warned was possible in the owner's manual for the subject P320 pistol. Even though the P320 model pistol satisfied all industry standards for abusive handling, including drop fire testing requirements, SIG discovered that under certain circumstances and at certain angles, the P320 could discharge when dropped as it had warned consumers. As a result, in August 2017, SIG implemented an upgrade program which modified the design of certain internal components to reduce their mass and enhance the drop fire protection of the P320 pistol. Information about the upgrade program was provided to all of SIG's dealers and distributors and widely reported within

the firearms industry. Any remaining allegations in Paragraph 43 of Plaintiffs' Amended Complaint are denied.

44.    SIG denies the allegations contained in Paragraph 44 of Plaintiffs' Amended Complaint and demands strict proof at trial.

45.    SIG admits that the P320 model pistol has not been recalled but denies that any recall was necessary or warranted. The P320 model pistol is equipped with all necessary safety features, including multiple redundant internal safeties that prevent it from firing without trigger actuation. Just like every other firearm, the P320 is designed to fire when the trigger is pulled. As a result, any P320 discharge incident that resulted in injury to the user or a bystander occurred as a result of a trigger pull. SIG denies any remaining allegations contained in Paragraph 45.

46.    SIG admits that the P320 model pistol does not fire without trigger actuation due to multiple, redundant internal safeties. SIG further responds that the statement contained in Paragraph 46 is incomplete and not put into context. To the extent Plaintiffs are making allegations in connection with the quoted language or the referenced documents, SIG denies such allegations. SIG further responds that the document speaks for itself. SIG denies any remaining allegations contained in Paragraph 46 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial.

47.    SIG admits that the P320 model pistol does not fire without trigger actuation due to multiple, redundant internal safeties. SIG further responds that the statement contained in Paragraph 47 is incomplete and not put into context. To the extent Plaintiffs are making allegations in connection with the quoted language or the referenced documents, SIG denies such allegations, and SIG further responds that the document speaks for itself. SIG further denies that the subject incident occurred without the trigger of the subject P320 being pulled and demands strict proof thereof at trial.

48.    SIG admits that the product manual for the P320 model pistols plainly warned as follows:



**⚠ WARNING  – DROPPED PISTOL**

If dropped, the pistol may fire. Keep the chamber empty unless actually firing!

**ANY FIREARM MAY FIRE IF DROPPED**

SIG denies that this statement is contradictory to other statements made by SIG regarding the P320 model pistol, and SIG denies any remaining allegations in Paragraph 48 and demands strict proof thereof at trial.

49.    SIG admits that it has knowledge of how law enforcement officers commonly carry their firearms, but SIG denies knowledge and information sufficient to form a belief as to whether it is standard operating procedure for "[m]any U.S. law enforcement agencies, local police departments, military personnel at a commander's discretion, and private owners routinely carry pistols with a chambered round." SIG denies any remaining allegations contained in Paragraph 49 of Plaintiffs' Amended Complaint.

50.    Denied as stated. The statement contained in Paragraph 50 is incomplete and not put into context. To the extent Plaintiffs are making allegations in connection with the quoted language or a particular document, SIG denies such allegations, and SIG further responds that the document speaks for itself. By way of further response, SIG warns in its product manual that a user should not load a round into the chamber until he or she is ready to use the pistol:

**1.0 SAFETY WARNINGS - Continued**

Do not load a round into the chamber until you are ready to use the pistol. If
your firearm is equipped with a manual safety, keep the safety ON and your
finger off the trigger until you are ready to fire. Always move the safety to
its intended position and visually check it. The safety is not ON unless it is
completely ON.

51.     Denied as stated. The statement contained in Paragraph 51 is incomplete and not

put into context. To the extent Plaintiffs are making allegations in connection with the quoted

language or a particular document, SIG denies such allegations, and SIG further responds that the

document speaks for itself. By way of further response, SIG warns in its product manual that a

user should not load a round into the chamber until he or she is ready to use the pistol:

**1.0 SAFETY WARNINGS - Continued**

Do not load a round into the chamber until you are ready to use the pistol. If
your firearm is equipped with a manual safety, keep the safety ON and your
finger off the trigger until you are ready to fire. Always move the safety to
its intended position and visually check it. The safety is not ON unless it is
completely ON.

52.     SIG admits only that the P320 is the first striker-fired pistol designed and

manufactured by SIG. SIG responds that the information contained in footnote 1 generally

describes how a striker-fired pistol operates versus a hammer-fired pistol but denies that the

firearm shown in the footnote is a P320 pistol. SIG further denies the reference comparing a striker-

fired pistol to a "bow and arrow," and denies that the pistol's striker-sear engagement is the only

safety preventing the pistol from firing unintentionally. SIG denies the remaining allegations in

Paragraph 52 and demands strict proof thereof at trial.

53.     SIG admits that the frame of the P320 is based on the prior P250 model firearm.

SIG denies any remaining allegations contained in Paragraph 53.

54.     SIG admits that the U.S. Army selected a variant of the P320 model pistol, referred

to as the M17 and the M18 Modular Handgun System, as its new service weapon, with the contract

being awarded to SIG in January 2017. SIG further admits that it worked with the Army to make

various modifications and performance improvements to the M17/M18 pistols during 2017. SIG denies the remaining allegations contained in Paragraph 54 and demands strict proof thereof at trial.

55.    SIG denies that an external manual safety was negotiated with the United States Army. Rather, the external manual safety was required in the solicitation and was included as a feature on the pistols originally sent to the Army for evaluation. SIG denies the remaining allegations contained in Paragraph 55 and demands strict proof thereof at trial.

56.    SIG admits that the P320 model pistol is offered both with and without a manual safety at the consumer's option based on their philosophy of use and firearms handling experience and training. SIG denies any remaining allegations contained in Paragraph 56 as stated and demands strict proof thereof at trial.

57.    SIG denies the allegations contained in Paragraph 57 of Plaintiffs' Amended Complaint as stated and demands strict proof at trial.

58.    SIG admits that an external manual safety was technologically feasible and was, in fact, an available option to Plaintiff when he purchased his P320 pistol. However, Plaintiffs chose to purchase a P320 pistol that was not equipped with a manual safety.

59.    SIG denies the allegations contained in Paragraph 59 of Plaintiffs' Amended Complaint as stated and demands strict proof thereof at trial. SIG further responds that a manual safety was available as an option at the time Plaintiff purchased his P320 pistol but he chose to purchase a P320 pistol without a manual safety. SIG admits that an engaged manual safety would prevent the trigger from pulling and the pistol from firing.

60.    SIG denies the allegations contained in Paragraph 60 and demands strict proof thereof at trial. SIG further responds that the P320 pistol was available with a manual safety as an

optional feature at the time Plaintiff purchased his pistol, but he chose to purchase a P320 model pistol without this feature.

61.    SIG denies the allegations contained in Paragraph 61 and demands strict proof thereof at trial. SIG further responds that the P320 pistol was available with a manual safety as an optional feature at the time Plaintiff purchased his pistol, but he chose to purchase a P320 model pistol without this feature.

62.    SIG denies the allegations contained in Paragraph 62 and demands strict proof thereof at trial. SIG further responds that the P320 pistol was available with a manual safety as an optional feature at the time Plaintiffs purchased his pistol, but he chose to purchase a P320 model pistol without this feature.

63.    SIG denies the allegations contained in Paragraph 63 and demands strict proof thereof at trial. SIG further responds that the P320 pistol was available with a manual safety as an optional feature at the time Plaintiffs purchased his pistol, but he chose to purchase a P320 model pistol without this feature.

64.    SIG denies the description of the Connecticut incident as alleged in Paragraph 64. With respect to the language attributed to the P320 owner's manual, SIG responds that the document speaks for itself. To the extent Plaintiffs are making any allegations in connection with the quoted language or the referenced document, SIG denies such allegations, and SIG denies any remaining allegations contained in Paragraph 64 and demands strict proof thereof at trial.

65.    SIG denies the characterization of SIG's warning contained in the P320 owner's manual and further states that the document referenced speaks for itself. SIG denies any remaining allegations contained in Paragraph 65 and demands strict proof thereof at trial.

66.    SIG denies the characterization of SIG's warning contained in the P320 owner's manual and further states that the document referenced speaks for itself. SIG denies any remaining allegations contained in Paragraph 66 and demands strict proof thereof at trial.

67.    SIG denies the characterization of SIG's warning contained in the P320 owner's manual and further states that the document referenced speaks for itself. SIG denies any remaining allegations contained in Paragraph 67 and demands strict proof thereof at trial.

68.    SIG responds that the language quoted in Paragraph 68 is incomplete and not put into context. To the extent Plaintiffs is making any allegations in connection with the quoted language or the referenced document, SIG denies such allegations, and SIG further responds that the referenced document speaks for itself. SIG denies any remaining allegations contained in Paragraph 68.

69.    SIG denies the allegations contained in Paragraph 69, including the allegations in footnote 2, and demands strict proof thereof at trial.

70.    The allegations in Paragraph 70 are conclusions of law to which no response is required. SIG specifically denies that the P320 model pistol was defective in its design or unreasonably dangerous and demands strict proof thereof at trial. To the extent Paragraph 70 contains allegations of fact, all such allegations are denied and strict proof thereof is demanded at trial.

71.    SIG denies the allegations contained in Paragraph 71. SIG specifically denies that the P320 model pistol was defective in its design or unreasonably dangerous and demands strict proof thereof at trial.

72.    SIG admits that it was aware of allegations of negligent discharges involving P320 pistols and other pistols that were the result of the user inadvertently pulling the trigger. SIG denies any remaining allegations contained in Paragraph 72 and demands strict proof thereof at trial.

73.     The allegations contained in Paragraph 73 lack sufficient specificity to permit a meaningful response and, as such, SIG denies them and demands strict proof thereof at trial. Upon information and belief, the incidents described in Paragraph 73, to the extent true, did not involve P320 model pistols.

74.     SIG admits that it was made aware of an incident involving a Roscommon County Sheriff's deputy whose P320 model pistol discharged as he was exiting his vehicle. SIG further responds that the Roscommon County Sheriff's Office's investigation concluded that the pistol discharged as the result of a seatbelt buckle becoming entangled in the trigger guard area of the deputy's pistol, causing the trigger to be pulled. SIG denies that the pistol at issue can be seen on the bodycam video, and SIG denies any remaining allegations contained in Paragraph 74.

75.     SIG admits that it is aware of alleged incidents of negligent discharges in Surprise, AZ in 2016, but SIG denies that those discharges occurred without a trigger pull as alleged in Paragraph 75 and demands strict proof thereof at trial.

76.     SIG admits that it is aware of an alleged incident that occurred in October 2016 in South Carolina involving Mr. Frankenberry where he was carrying his P320 pistol unsecured (i.e., without a holster) in the waistband of his pants as he used the restroom. SIG denies that the subject P320 pistol discharged in that incident without a trigger pull. SIG further avers that this case was dismissed after Officer Thomas Frankenberry could not support a viable theory of defect after the court precluded his expert from testifying for being unqualified and offering unreliable opinions. SIG denies any remaining allegations contained in Paragraph 76 and demands strict proof thereof at trial.

77.     SIG admits that it is aware of an incident involving a Holmes Beach, Florida officer who was injured when his P320 pistol discharged following an overnight shift. SIG further responds that the investigation into that incident determined that the officer inadvertently pulled

16

the trigger as he was attempting to unload the pistol. SIG denies any remaining allegations contained in Paragraph 77 and demands strict proof thereof at trial.

78.    SIG admits that it is aware of an incident where the deputy was testing the trigger pull of his firearm, it discharged, and he was criminally charged. Furthermore, upon information and belief, the incident described in Paragraph 78 did not involve a P320 model pistol. The remaining allegations in Paragraph 78 are denied and SIG demands strict proof thereof at trial.

79.    SIG admits that a Connecticut police officer alleged that he was injured when he dropped an unsecured P320 pistol while transporting it to his vehicle, but SIG denies the remaining allegations contained in Paragraph 79 and demands strict proof thereof at trial. Upon information and belief, the P320 pistol at issue in that incident fell from a greater height than alleged, likely from the roof of the user's vehicle.

80.    SIG admits that it was notified of an alleged negligent discharge of a dropped P320 pistol as alleged in Paragraph 80, but denies any remaining allegations contained in Paragraph 80 and demands strict proof thereof at trial.

81.    SIG admits that it was notified of an alleged negligent discharge of a dropped P320 pistol as alleged in Paragraph 81, but denies any remaining allegations contained in Paragraph 81 and demands strict proof thereof at trial.

82.    SIG admits that it was notified of an alleged negligent discharge of a dropped P320 pistol as alleged in Paragraph 82, but denies any remaining allegations contained in Paragraph 82 and demands strict proof thereof at trial.

83.    SIG admits that it sold P320 pistols to the Loudon County Sheriff's Office in or around June 2017, which is entirely irrelevant to this action which involves a privately owned P320 model pistol, not a P320 owned by the Loudon County Sheriff's Office. SIG denies any

remaining allegations contained in Paragraph 83, including the allegations contained in footnote 3, and demands strict proof thereof at trial.

84.    SIG admits that it was notified of an alleged negligent discharge of a dropped P320 pistol as alleged in Paragraph 84, but denies any remaining allegations contained in Paragraph 84 and demands strict proof thereof at trial.

85.    SIG admits that a Connecticut police officer filed a lawsuit alleging that he was injured when he dropped an unsecured P320 pistol while transporting it to his vehicle, but SIG denies the remaining allegations contained in Paragraph 85 and demands strict proof thereof at trial.

86.    SIG admits that there had been no drop-related P320 incidents in the U.S. commercial market that were reported to SIG as of August 2017, when SIG's CEO made a statement to that effect. SIG denies any allegations related to the statement contained in Paragraph 86, as the statement speaks for itself.

87.    SIG denies the allegations contained in Paragraph 87 of Plaintiffs' Amended Complaint and demands strict proof thereof at trial. SIG further responds that Officer Sheperis was a member of law enforcement, not the U.S. commercial market which is limited to civilian purchasers.

88.    SIG admits that it announced the P320 upgrade program on August 8, 2017. The language quoted in Paragraph 88 is incomplete and not put into context. SIG further responds that the referenced document, in its full and complete version, speaks for itself. SIG denies any remaining allegations contained in Paragraph 88 and demands strict proof thereof at trial.

89.    SIG denies any allegations related to the statement contained in Paragraph 89, as the statement speaks for itself. SIG further states that industry standards apply to the design and manufacture of firearms and the P320 model pistol has consistently satisfied the relevant industry

standards for abusive handling, including drop fire, in place at the time the pistols were manufactured.

90.    SIG admits that the Consumer Product Safety Commission does not have jurisdiction over the regulation of firearms. SIG denies the remaining allegations contained in Paragraph 90 as stated and demands strict proof thereof at trial. SIG further states that industry standards apply to the design and manufacture of firearms and the P320 model pistol has consistently satisfied the relevant industry standards for abusive handling, including drop fire, in place at the time the pistols were manufactured.

91.    SIG denies the allegations contained in Paragraph 91 as stated and demands strict proof thereof at trial. SIG further responds that detailed information regarding the upgrade program and the reasons for implementing the program are available on SIG's website at: https://www.sigsauer.com/p320-voluntary-upgrade-program.

92.    SIG admits that it is aware of an order allegedly issued by the Chief of Police as alleged in Paragraph 92, but SIG denies any remaining allegations contained in Paragraph 92 and demands strict proof thereof at trial.

93.    SIG admits that is aware of a negligent discharge incident involving a P320 pistol where the officer reportedly fell onto his pistol while pursuing a suspect. SIG denies that the P320 pistol involved in that incident discharged without trigger actuation and denies any remaining allegations contained in Paragraph 93.

94.    SIG denies knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 94 as stated and demands strict proof thereof at trial.

95.    SIG admits that Tyler Herman of McCloud, Oklahoma was injured when he inadvertently pulled the trigger on his P320 pistol as he was trying to remove his holstered firearm

from his jeans. SIG denies the remaining allegations contained in Paragraph 95 and demands strict proof thereof at trial.

96.    SIG admits that Loudon County, Virginia deputy sheriff Marcie Vadnais was injured when she inadvertently pulled the trigger on her P320 pistol as she was trying to remove her holstered firearm from her belt while seated in her department-issued vehicle. SIG denies the remaining allegations contained in Paragraph 96 and demands strict proof thereof at trial.

97.    SIG admits that it has sent supplemental information to customers reminding them of the continued availability of the free upgrade program. SIG further admits that the P320 model pistol has never been recalled. SIG denies any remaining allegations contained in Paragraph 97 and demands strict proof thereof at trial.

98.    SIG admits that it was notified of an alleged negligent discharge as alleged in Paragraph 98, but denies any remaining allegations contained in Paragraph 98 and demands strict proof thereof at trial.

99.    SIG admits that it is aware of an incident as alleged in Paragraph 99 which involved an intentional trigger pull but denies the characterization of the incident included in Paragraph 99. SIG denies any remaining allegations contained in Paragraph 99 and demands strict proof thereof at trial.

100.    SIG admits that it was notified of an incident involving the discharge of a Rancho Cucamonga police officer's P320 pistol. SIG further responds that following an internal investigation by the Rancho Cucamonga Police Department, it was determined that a set of keys attached to the outside of a bag being carried by the officer had become inserted in the trigger area of the officer's P320, causing the trigger to be pulled. SIG denies any remaining allegations contained in Paragraph 100 and demands strict proof thereof at trial.

101.    SIG denies knowledge of any incident involving Letrell Hayes as alleged in Paragraph 101 and demands strict proof thereof at trial.

102.    SIG admits that Stephen Mayes was injured when he inadvertently pulled the trigger on his P320 pistol as he was trying to remove his pistol from its holster while doing speed drills. SIG denies any remaining allegations contained in Paragraph 102 and demands strict proof thereof at trial.

103.    SIG admits that it was made aware of an alleged discharge incident involving Mr. Lang but denies that the P320 pistol at issue discharged without a trigger pull. SIG denies any remaining allegations contained in Paragraph 103.

104.    SIG admits that it was notified of an alleged negligent discharge involving Lieutenant Ahern (which did not result in any physical injury) as alleged in Paragraph 104 but denies that the P320 pistol at issue discharged without a trigger pull. SIG denies any remaining allegations contained in Paragraph 104 and demands strict proof thereof at trial.

105.    SIG admits that it was notified of an alleged negligent discharge involving Lieutenant Ahern (which did not result in any physical injury) as alleged in Paragraph 105 but denies that the P320 pistol at issue discharged without a trigger pull. SIG states that armorer training is not relevant to proper gun handling. SIG further responds that the document quoted in footnote 4 of Paragraph 105 is a writing which speaks for itself, and any characterization thereof is denied. SIG denies any remaining allegations contained in Paragraph 105 and demands strict proof thereof at trial.

106.    SIG denies the allegations contained in Paragraph 106 as stated. Upon information and belief, the Somerville Police Department investigated the referenced negligent discharge incident and determined that the subject P320 pistol was unsecured inside a gym bag and while it was being carried, something inside the gym bag caused the trigger to be pulled. Mr. Collette

recently filed a motion to voluntarily dismiss his lawsuit against SIG with prejudice after his retained expert conceded that the only way the P320 pistol will fire is through trigger actuation. SIG had a motion for summary judgment pending at the time Mr. Collette filed his motion. SIG denies any remaining allegations contained in Paragraph 106 and demands strict proof thereof at trial.

107.    SIG admits that it was notified of an alleged discharge involving a Philadelphia transit officer, which did not result in any injury, as alleged in Paragraph 107 but denies that the P320 pistol at issue discharged without a trigger pull. SIG denies that any video of the incident shows the P320 pistol involved. SIG denies any remaining allegations contained in Paragraph 107 and demands strict proof thereof at trial.

108.    SIG admits that it was notified of an alleged discharge involving a Philadelphia transit officer, which did not result in any injury, as alleged in Paragraph 108 but denies that the P320 pistol at issue discharged without a trigger pull. SIG denies that any video of the incident shows the P320 pistol involved. SIG further states that the quote attributed to the officer, if reduced to writing, is a writing which speaks for itself and any characterization thereof is denied. SIG denies any remaining allegations contained in Paragraph 108 and demands strict proof thereof at trial.

109.    SIG lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109, but SIG denies that the P320 pistol could have discharged without a trigger pull and demands strict proof thereof at trial.

110.    SIG admits that it was notified of an alleged discharge involving a Cambridge Massachusetts Police Officer as alleged in Paragraph 110 but denies that the P320 pistol could have discharged without a trigger pull and demands strict proof thereof at trial.

111.    SIG admits that it was notified of an alleged negligent discharge involving Officer Kneski as alleged in Paragraph 111, but denies the remaining allegations contained in Paragraph 111 and demands strict proof thereof at trial.

112.    SIG admits that it was notified of an alleged negligent discharge involving Officer Gardette as alleged in Paragraph 112, but denies the remaining allegations contained in Paragraph 112 and demands strict proof thereof at trial.

113.    SIG admits that the alleged negligent discharge involving Officer Gardette resulted in no physical injuries as alleged in Paragraph 113, but denies the remaining allegations contained in Paragraph 113 and demands strict proof thereof at trial.

114.    SIG admits that it was notified of an alleged negligent discharge involving Officer Albert as alleged in Paragraph 114, but denies the remaining allegations contained in Paragraph 114 and demands strict proof thereof at trial.

115.    SIG admits that there have been prior instances of negligent discharges at the Sig Sauer Academy but denies that any instances involved a P320 pistol discharging without the trigger being pulled. SIG denies any remaining allegations contained in Paragraph 115 as stated and demands strict proof thereof at trial.

116.    SIG admits that it is aware of an alleged negligent discharge involving Deputy Duff as alleged in Paragraph 116, but denies the remaining allegations contained in Paragraph 116 and demands strict proof thereof at trial.

117.    SIG admits that it was notified of an alleged negligent discharge involving Officer Northrop as alleged in Paragraph 117, but denies the remaining allegations contained in Paragraph 117 and demands strict proof thereof at trial. SIG further responds that the Tampa Police Department investigated Officer Northrop's incident and determined that the incident resulted

from Officer Northrop's negligent handling of the firearm which caused the trigger to be inadvertently pulled.

118.    SIG admits that it was notified of an alleged negligent discharge involving Officer Northrop as alleged in Paragraph 118, but denies the remaining allegations contained in Paragraph 118 and demands strict proof thereof at trial. SIG further responds that the Tampa Police Department investigated Officer Northrop's incident and determined that the incident resulted from Officer Northrop's negligent handling of the firearm which caused the trigger to be inadvertently pulled.

119.    SIG admits that it is aware of an alleged negligent discharge involving Officer Henyan as alleged in Paragraph 119, but denies the remaining allegations contained in Paragraph 119 and demands strict proof thereof at trial.

120.    SIG admits that it was notified of an alleged negligent discharge involving George Abrahams as alleged in Paragraph 120, but denies the remaining allegations contained in Paragraph 120 and demands strict proof thereof at trial.

121.    SIG denies the characterization of Mr. Abrahams's discharge as alleged and denies any remaining allegations contained in Paragraph 121 and demands strict proof thereof at trial.

122.    SIG admits that it is aware of an alleged negligent discharge involving Officer Maritato as alleged in Paragraph 122, but denies the remaining allegations contained in Paragraph 122 and demands strict proof thereof at trial.

123.    SIG admits that it is aware of an alleged negligent discharge involving Agent Halase as alleged in Paragraph 123, but denies the remaining allegations contained in Paragraph 123 and demands strict proof thereof at trial. SIG further responds that shortly after the incident, upon information and belief, Agent Halase told investigators from the Milwaukee Police

Department that he believed his clothing got caught in the trigger of his pistol as he was holstering it causing the firearm to discharge.

124.    SIG lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in Paragraph 124 based upon the minimal information provided, but SIG denies that the P320 pistol could have discharged without the trigger being pulled and demands strict proof thereof at trial.

125.    SIG admits that it was notified of an alleged negligent discharge involving Officer Slatowski as alleged in Paragraph 125, but denies the remaining allegations contained in Paragraph 125 and demands strict proof thereof at trial.

126.    SIG admits that it was notified of an alleged negligent discharge involving Officer Slatowski while holstered as alleged in Paragraph 126, but denies the remaining allegations contained in Paragraph 126 and demands strict proof thereof at trial.

127.    SIG denies the allegations contained in Paragraph 127 and demands strict proof thereof at trial.

128.    SIG denies the allegations contained in Paragraph 128 and demands strict proof thereof at trial.

129.    SIG admits that it was made aware of a negligent discharge incident involving ICE Officer Catherine Chargualaf that occurred at the Tennessee Wildlife Resources Agency on December 8, 2020, but SIG denies that the P320 pistol could have discharged without a trigger pull and demands strict proof thereof at trial. SIG further denies any remaining allegations contained in Paragraph 129.

130.    SIG admits that it is aware of an alleged negligent discharge involving Timothy Davis as alleged in Paragraph 130, but denies the remaining allegations contained in Paragraph 130 and demands strict proof thereof at trial. By way of further response, an eyewitness recently

testified under oath that he saw Mr. Davis intentionally pull the trigger of his P320, causing the discharge at issue, during a heated domestic dispute with his then-wife.

131.    SIG admits that it has been notified of an alleged negligent described in Paragraph 131, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 131 and demands strict proof thereof at trial.

132.    SIG admits that it was made aware of a negligent discharge incident involving Special Agent Amy Hendel that occurred at a firing range in Cottage Grove, Minnesota on May 12, 2021, but SIG denies that the P320 pistol could have discharged without a trigger pull and demands strict proof thereof at trial. SIG further denies any remaining allegations contained in Paragraph 132.

133.    SIG admits that it was notified of an alleged negligent discharge involving Officer Colwell as alleged in Paragraph 133, but SIG denies that the P320 pistol could have discharged without a trigger pull and demands strict proof thereof at trial. SIG further denies any remaining allegations contained in Paragraph 133.

134.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 134, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 134 and demands strict proof thereof at trial.

135.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 135, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 135 and demands strict proof thereof at trial.

136.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 136, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 136 and demands strict proof thereof at trial.

137.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 137, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 137 and demands strict proof thereof at trial.

138.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 138, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 138 and demands strict proof thereof at trial.

139.    SIG admits that Ms. Doffeny's incident was captured on surveillance video, but SIG denies that the video shows the subject pistol or that it supports the assertion that the subject pistol discharged without trigger actuation. SIG denies any remaining allegations in Paragraph 139.

140.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 140, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 140 and demands strict proof thereof at trial.

141.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 141, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 141 and demands strict proof thereof at trial.

142.    SIG admits that Officer Thatcher's incident was captured on surveillance video by the Honesdale Police Department. SIG further responds that the video confirms that something, upon information and belief a seatbelt, interacted with the trigger area of Officer Thatcher's pistol, causing the trigger to be actuated as he stood and exited his vehicle. SIG denies any remaining allegations in Paragraph 142.

143.    SIG admits that the Honesdale Police Department filed a claim in small claims court against SIG relating to the return of certain firearms and related equipment. Upon information and belief, that claim was settled by the distributor who sold the subject pistols to the Honesdale Police

Department. SIG did not contribute to any settlement nor did it issue any refund with regards to the subject P320 pistol or any P320 pistols sold to the Honesdale Police Department. SIG denies any remaining allegations contained in Paragraph 143 and demands strict proof thereof at trial.

144.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 144, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 144 and demands strict proof thereof at trial.

145.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 145, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 145 and demands strict proof thereof at trial.

146.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 146, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 146 and demands strict proof thereof at trial.

147.    SIG admits that Officer Reyes's incident was captured on surveillance camera, but denies that the video shows whether anything interacted with the trigger causing the pistol to fire. SIG further denies that the P320 pistol is capable of firing without trigger actuation. SIG denies any remaining allegations in Paragraph 147.

148.    SIG admits that it is aware of the alleged negligent discharge as described in Paragraph 148, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 148 and demands strict proof thereof at trial. By way of further response, Mr. Breedon told law enforcement that he thought the trigger was pulled by a button on his suit jacket after he removed the pistol from its holster to show a co-worker while standing in the co-worker's office.

149.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 149, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 149 and demands strict proof thereof at trial.

150.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 150, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 150 and demands strict proof thereof at trial.

151.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 151 of Plaintiffs' Amended Complaint and therefore denies the same.

152.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 152 of Plaintiffs' Amended Complaint and therefore denies the same.

153.    SIG admits that it has been notified of an alleged negligent discharge as described in Paragraph 153, but denies the incident occurred without full trigger actuation. SIG denies any remaining allegations contained in Paragraph 153 and demands strict proof thereof at trial.

154.    SIG admits that the Oklahoma Highway Patrol has documented multiple incidents where a foreign object caused the trigger on an officer's P320 pistol to be actuated and the gun to fire. SIG denies that any of these incidents occurred without trigger actuation. SIG denies any remaining allegations contained in Paragraph 154 and demands strict proof at trial.

155.    SIG denies the allegations contained in Paragraph 155 and demands strict proof thereof at trial.

156.    SIG admits that it is aware of other alleged negligent discharges of P320 pistols where the user unintentionally pulled the trigger or caused the trigger to be pulled by a foreign object. SIG denies that the P320 pistol is capable of discharging without a trigger pull and, therefore, any P320 pistols that discharged did so only through trigger actuation.

157.    SIG admits that the P320 model pistol has never been recalled, but SIG denies that the P320 model pistol is defective. SIG further denies the remaining allegations contained in Paragraph 157.

## II.    THE DROP FIRE VULNERABLITY OF THE P320

158.    SIG denies the allegations contained in Paragraph 158 of Plaintiffs' Amended Complaint. The P320 model pistol has always complied with all industry and government safety standards applicable to handguns sold in the United States. Through additional testing above and beyond the recognized industry standards, SIG determined that the P320 could experience drop fires under certain conditions. SIG implemented an upgrade program to enhance the safety of the P320 model pistol beyond the industry standards as part of its continuing improvement process for all of its products. This upgrade program was entirely free of charge to all P320 owners, including Plaintiffs.

159.    SIG denies the allegations contained in Paragraph 159 of Plaintiffs' Amended Complaint. The P320 model pistol has always complied with all industry and government safety standards applicable to handguns sold in the United States. Through additional testing above and beyond the recognized industry standards, SIG determined that the P320 could experience drop fires under certain conditions. SIG implemented an upgrade program to enhance the safety of the P320 model pistol beyond the industry standards as part of its continuing improvement process for all of its products. This upgrade program was entirely free of charge to all P320 owners, including Plaintiffs.

160.    SIG admits the allegations contained in Paragraph 160 of Plaintiffs' Amended Complaint. SIG further responds that the drop testing performed by the German Police was not conducted to any recognized industry standard to which the P320 – or any other pistol sold in the United States – is designed and tested.

161. SIG denies the allegations contained in Paragraph 161 of Plaintiffs' Amended Complaint. SIG further responds that the drop testing performed by the German Police was not conducted to any recognized industry standard to which the P320 – or any other pistol sold in the United States – is designed and tested.

162. SIG admits that it works with all its customers to address any questions or concerns about any products that SIG sells. SIG denies the remaining allegations contained in Paragraph 162 of Plaintiffs' Amended Complaint.

163. SIG denies the allegations contained in Paragraph 163 of Plaintiffs' Amended Complaint.

164. SIG admits that it constantly reviews all of its products and searches for ways to improve the functionality and safety of its products. SIG denies the allegation that it engaged in any "secret re-design" of the P320 model pistol. SIG denies any remaining allegations contained in Paragraph 164 of Plaintiffs' Amended Complaint.

165. SIG admits that the U.S. Army conducted extensive testing on a variant of the P320 model pistol – the M-17 and M-18 – as part of its Modular Handgun System Program. After evaluating the M-17 and M-18 pistols, including subjecting them to drop testing, the Army selected the M17 and M18 pistols to equip its soldiers with. As a result of the contract with the Army, the P320 model pistol is likely the most tested firearm on the market. SIG denies the remaining allegations contained in Paragraph 165 of Plaintiffs' Amended Complaint.

166. SIG admits the allegations contained in Paragraph 166 of Plaintiffs' Amended Complaint. For clarification purposes, the P320 variant tested by and selected by the U.S. Army is referred to as the M-17 and M-18 (or XM-17 and XM-18).

167. SIG admits the allegations contained in Paragraph 167 of Plaintiffs' Amended Complaint.

168.    SIG responds that the document referenced in Paragraph 168 of Plaintiffs' Amended Complaint speaks for itself. SIG denies any allegations attributed to the information contained in the document referenced, which are incomplete and not put into context. SIG further responds that the drop test conducted by the Army which resulted in a single drop fire was conducted outside the parameters of the TOP 3-2-045 standard to which the pistols submitted for review were tested. Moreover, after conducting this testing in 2016 – which was not reported to SIG until after the contract was awarded, the Army selected the M-17 and M-18 over numerous other competitors.

169.    SIG denies the allegations contained in Paragraph 169 of Plaintiffs' Amended Complaint.

170.    SIG denies the allegations contained in Paragraph 170 of Plaintiffs' Amended Complaint.

171.    SIG admits that Omaha Outdoors purported to conduct testing on P320 pistols which had previously been torture tested. SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 171 of Plaintiffs' Amended Complaint.

172.    SIG is without sufficient knowledge to either admit or deny the allegations regarding Omaha Outdoors's motivation for conducting testing on the P320 pistol. SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 172 of Plaintiffs' Amended Complaint.

173.    SIG admits that it issued a statement on August 4, 2017 regarding the P320 pistol and that press release speaks for itself. SIG denies any allegations regarding the statement and any remaining allegations contained in Paragraph 173 of Plaintiffs' Amended Complaint.

174.    SIG admits that it issued a statement on August 4, 2017 regarding the P320 pistol and that press release speaks for itself. SIG denies any allegations regarding the statement and any remaining allegations contained in Paragraph 174 of Plaintiffs' Amended Complaint.

175.    SIG admits that Mr. Tuohy purported to conduct testing on the P320 which had been previously torture tested, but SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 172 of Plaintiffs' Amended Complaint.

176.    SIG admits that Mr. Tuohy purported to conduct testing on the P320 which had been previously torture tested, but SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 176 of Plaintiffs' Amended Complaint.

177.    SIG admits that Mr. Tuohy published a video purporting to show testing he had conducted on the P320 which had been previously torture tested, but SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 177 of Plaintiffs' Amended Complaint.

178.    SIG admits that Mr. Tuohy published a video purporting to show testing he had conducted on the P320 which had been previously torture tested, but SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 178 of Plaintiffs' Amended Complaint.

179.    SIG admits that Mr. Tuohy sent an email to SIG regarding purported testing he had conducted on the P320 which had been previously torture tested, but SIG denies the validity of any of the testing conducted by Omaha Outdoors, and SIG denies any remaining allegations contained in Paragraph 179 of Plaintiffs' Amended Complaint.

180.    SIG responds that Mr. Tuohy's email speaks for itself, and SIG denies any characterization of the email which is incomplete and taken out of context. SIG further denies the validity of any testing of P320 pistols that had been torture tested by Omaha Outdoors. SIG denies any remaining allegations contained in Paragraph 180 of Plaintiffs' Amended Complaint.

181.    SIG responds that Mr. Tuohy's email speaks for itself, and SIG denies any characterization of the email which is incomplete and taken out of context. SIG further denies the validity of any testing of P320 pistols that had been torture tested by Omaha Outdoors. SIG denies any remaining allegations contained in Paragraph 181 of Plaintiffs' Amended Complaint.

182.    SIG responds that Mr. Tuohy's email speaks for itself, and SIG denies any characterization of the email which is incomplete and taken out of context. SIG further denies the validity of any testing of P320 pistols that had been torture tested by Omaha Outdoors. SIG denies any remaining allegations contained in Paragraph 182 of Plaintiffs' Amended Complaint.

183.    SIG responds that Mr. Tuohy's email speaks for itself, and SIG denies any characterization of the email which is incomplete and taken out of context. SIG further denies the validity of any testing of P320 pistols that had been torture tested by Omaha Outdoors. SIG denies any remaining allegations contained in Paragraph 183 of Plaintiffs' Amended Complaint.

184.    SIG denies the allegations contained in Paragraph 184 of Plaintiffs' Amended Complaint.

185.    SIG denies the allegations contained in Paragraph 185 of Plaintiffs' Amended Complaint.

186.    SIG admits that it did not recall the P320 pistol, which continued to meet all industry and governmental standards for abusive handling, including drop testing, but SIG denies there was any need to recall the P320 pistol. SIG further admits that it modified the design of the P320 model pistol and implemented a voluntary upgrade program that allowed any P320 owner to

have his or her P320 pistol modified to contain the new design of the internal components. This upgrade program was entirely free of charge to consumers and was designed to enhance the performance and safety of the P320 model pistol. SIG denies any remaining allegations contained in Paragraph 186 of Plaintiffs' Amended Complaint.

187.    SIG admits that the P320 model pistol has always been safety designed and not defective. The P320 pistol has always met all industry and governmental standards to which it is designed and tested. However, SIG constantly looks to improve all of its products to enhance the performance and safety of those products. As a result of this culture of continuous improvement, SIG made modifications to the P320 model pistol which was offered to all P320 owners completely free of charge. SIG denies any remaining allegations contained in Paragraph 187 of Plaintiffs' Amended Complaint.

188.    SIG admits that it implemented a voluntary upgrade program to enhance the performance and safety of the P320 model pistol, but SIG denies the P320 was defectively designed. SIG further admits that it made the upgrade program to all P320 owners completely free of charge. SIG denies any remaining allegations contained in Paragraph 188 of Plaintiffs' Amended Complaint.

### III.    CABELA'S

189.    The allegations contained in Paragraph 189 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 189 of Plaintiffs' Amended Complaint and therefore denies the same.

190.    The allegations contained in Paragraph 190 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To

the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 190 of Plaintiffs' Amended Complaint and therefore denies the same.

191.    The allegations contained in Paragraph 191 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 191 of Plaintiffs' Amended Complaint and therefore denies the same.

192.    The allegations contained in Paragraph 192 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 192 of Plaintiffs' Amended Complaint and therefore denies the same.

193.    The allegations contained in Paragraph 193 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 193 of Plaintiffs' Amended Complaint and therefore denies the same.

194.    The allegations contained in Paragraph 194 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 194 of Plaintiffs' Amended Complaint and therefore denies the same.

195.    The allegations contained in Paragraph 195 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 195 of Plaintiffs' Amended Complaint and therefore denies the same.

196.    The allegations contained in Paragraph 196 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 196 of Plaintiffs' Amended Complaint and therefore denies the same.

197.    The allegations contained in Paragraph 197 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 197 of Plaintiffs' Amended Complaint and therefore denies the same.

198.    The allegations contained in Paragraph 198 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 198 of Plaintiffs' Amended Complaint and therefore denies the same.

199.    The allegations contained in Paragraphs 199 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to

either admit or deny the allegations contained in Paragraph 199 of Plaintiffs' Amended Complaint and therefore denies the same.

200.    The allegations contained in Paragraph 200 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 200 of Plaintiffs' Amended Complaint and therefore denies the same.

201.    SIG denies that the P320 was or has ever been dangerous or defective or that it had any safety hazards beyond those inherent and known related to firearms. The remainder of the allegations contained in Paragraph 201 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 201 of Plaintiffs' Amended Complaint and therefore denies the same.

202.    SIG denies that the P320 model pistol was or has ever been defective, either before or after the design was modified. Rather, the P320 model pistol has always met all industry and governmental standards for abusive handling, including drop safety. SIG admits that it requested that any pre-upgrade P320 model pistols in inventory at its retailers and distributors be returned to SIG to be upgraded with the modified design. The remainder of the allegations contained in Paragraph 202F of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 202 of Plaintiffs' Amended Complaint and therefore denies the same.

203.    SIG admits that the availability of the free upgrade program was widely discussed and known within the firearms community. SIG further admits that it informed its retailers and distributors about the upgrade program and requested that any pre-upgrade P320 model pistols in their inventory be returned to SIG to be upgraded with the modified design. Upon information and belief, information about the upgrade program would have been sent to Cabela's by SIG. The allegations contained in Paragraphs 203 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 203 of Plaintiffs' Amended Complaint and therefore denies the same.

204.    SIG denies that the P320 was or has ever been defective or not drop safe. Rather, the P320 model pistol has always met all industry and governmental standards for abusive handling, including drop safety. The remainder of the allegations contained in Paragraph 204 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 203 of Plaintiffs' Amended Complaint and therefore denies the same.

205.    SIG denies that the P320 was or has ever been defective or not drop safe. Rather, the P320 model pistol has always met all industry and governmental standards for abusive handling, including drop safety. The remainder of the allegations contained in Paragraph 204 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG responds that it is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 204 of Plaintiffs' Amended Complaint and therefore denies the same.

## JAMES HALL'S INCIDENT

206.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 206 of Plaintiffs' Amended Complaint and therefore denies the same.

207.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 207 of Plaintiffs' Amended Complaint and therefore denies the same.

208.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 208 of Plaintiffs' Amended Complaint and therefore denies the same.

209.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 209 of Plaintiffs' Amended Complaint and therefore denies the same.

210.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 210 of Plaintiffs' Amended Complaint and therefore denies the same.

211.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 211 of Plaintiffs' Amended Complaint and therefore denies the same.

212.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 212 of Plaintiffs' Amended Complaint and therefore denies the same.

213.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 213 of Plaintiffs' Amended Complaint and therefore denies the same.

214.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 214 of Plaintiffs' Amended Complaint and therefore denies the same.

215.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 215 of Plaintiffs' Amended Complaint and therefore denies the same.

216.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 216 of Plaintiffs' Amended Complaint and therefore denies the same.

217.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 217 of Plaintiffs' Amended Complaint and therefore denies the same.

218.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 218 of Plaintiffs' Amended Complaint and therefore denies the same.

219.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 219 of Plaintiffs' Amended Complaint and therefore denies the same.

### AS AND FOR AN ANSWER TO COUNT I – NEGLIGENCE

220.    SIG repeats, reiterates, and realleges each and every response to Paragraph 1 through Paragraph 219 as though fully set forth herein.

221.    SIG admits that certain duties are owed with respect to the design, manufacture and sale of certain products, including the P320 model pistol, but SIG denies that it breached any such duties.  SIG denies any remaining allegations contained in Paragraph 221 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

222.    SIG admits that certain duties are owed with respect to the design, manufacture and sale of certain products, including the P320 model pistol, but SIG denies that it breached any such duties.  SIG denies any remaining allegations contained in Paragraph 222 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

223.    SIG admits that certain duties are owed with respect to the design, manufacture and sale of certain products, including the P320 model pistol, but SIG denies that it breached any such duties.  SIG denies any remaining allegations contained in Paragraph 223 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

224.    SIG denies the allegations contained in Paragraph 224 of Plaintiffs' Amended Complaint, including the allegations contained in subparts i-xv, and respectfully refers all questions of law to this Honorable Court.

225.    SIG denies the allegations contained in Paragraph 225 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

226.    SIG denies the allegations contained in Paragraph 226 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

227.    SIG denies the allegations contained in Paragraph 227 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

228.    SIG denies the allegations contained in Paragraph 228 of Plaintiffs' Amended Complaint, and SIG specifically denies that it is liable to Plaintiffs in any way or for any amount.

**WHEREFORE**, Defendant SIG Sauer, Inc. demands judgment in its favor and against Plaintiffs together with all costs and attorney's fees.

## AS AND FOR AN ANSWER TO COUNT II – STRICT PRODUCT LIABILITY

229.    SIG repeats, reiterates, and realleges each and every response to Paragraph 1 through Paragraph 228 as though fully set forth herein.

230.    SIG denies the allegations contained in Paragraph 230 of Plaintiffs' Amended Complaint, including the allegations contained in subparts a-d, and respectfully refers all questions of law to this Honorable Court.

231.    SIG denies the allegations contained in Paragraph 231 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

232.    SIG denies the allegations contained in Paragraph 232 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

233.    SIG denies the allegations contained in Paragraph 233 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

234.    SIG denies the allegations contained in Paragraph 234 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

**WHEREFORE**, Defendant SIG Sauer, Inc. demands judgment in its favor and against Plaintiffs together with all costs and attorney's fees.

**AS AND FOR AN ANSWER TO COUNT III - NEGLIGENCE**
**JAMES HALL V. CABELA DEFENDANTS**

235.    SIG repeats, reiterates, and realleges each and every response to Paragraph 1 through Paragraph 234 as though fully set forth herein.

236-243. The allegations contained in Paragraphs 236 through 243 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG denies the allegations contained in Paragraphs 236 through 243 of Plaintiffs' Amended Complaint and respectfully refers all questions of law to this Honorable Court.

**AS AND FOR AN ANSWER TO COUNT III - NEGLIGENCE**
**JAMES HALL V. CABELA DEFENDANTS**

244.    SIG repeats, reiterates, and realleges each and every response to Paragraph 1 through Paragraph 243 as though fully set forth herein.

245-253. The allegations contained in Paragraphs 245 through 253 of Plaintiffs' Amended Complaint are directed at parties other than SIG and, therefore, no response to these allegations is required. To the extent a response is deemed necessary, SIG denies the allegations contained in Paragraphs 245 through 253 of Plaintiffs' Amended Complaint and respectfully refers all questions of law to this Honorable Court.

**AS AND FOR AN ANSWER TO COUNT III – LOSS OF CONSORTIUM**
**NANCI HALL V. ALL DEFENDANTS, INC.**

254.    SIG repeats, reiterates, and realleges each and every response to Paragraph 1 through Paragraph 253 as though fully set forth herein.

255.    SIG is without sufficient knowledge to either admit or deny the allegations contained in Paragraph 255 of Plaintiffs' Amended Complaint and therefore denies the same.

256.    SIG denies the allegations contained in Paragraph 256 of Plaintiffs' Amended Complaint, and respectfully refers all questions of law to this Honorable Court.

**WHEREFORE**, Defendant SIG Sauer, Inc. demands judgment in its favor and against Plaintiffs together with all costs and attorney's fees.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Alteration/Improper Use)**

SIG has no control over the maintenance, handling, or use of its products. SIG further states that if there was any defect or deficiency to a product manufactured by SIG, at the time of the incident alleged, such defect or deficiency did not relate to the original design, manufacture or sale of the product or of any problems undertaken by SIG, but on the contrary, the result is of other acts or omissions on the part of others for whom SIG is not responsible including negligent or faulty maintenance, handling, use, or alteration.

### THIRD AFFIRMATIVE DEFENSE
**(Written Warnings)**

No warnings or instructions were required because any claimed danger would be apparent to an ordinary user. However, SIG provided written warnings against the particular uses, misuses, or abuses by the Plaintiffs of the firearm that is the subject of the Amended Complaint. The warnings and instructions were sufficient to inform an ordinary user of the risk of harm. The risk of harm was one that an ordinary user would reasonably expect.

## FOURTH AFFIRMATIVE DEFENSE
### (Negligence of Others)

The occurrence, injuries and damages claimed by Plaintiffs were proximately caused by the acts, omissions, fault and/or negligence of Plaintiffs and/or other third parties over whom SIG had no right to control.

## FIFTH AFFIRMATIVE DEFENSE
### (Contributory Negligence)

Plaintiff was the sole proximate cause of the occurrence, injuries and damages claimed by Plaintiffs.

## SIXTH AFFIRMATIVE DEFENSE
### (Superseding/Intervening Cause)

SIG will show that any injury was due to and proximately caused and occasioned by the intervening and/or superseding cause, negligence and/or recklessness of a party or parties other than SIG. Such intervening and/or superseding cause, negligence and/or recklessness was/were the sole and proximate cause of the injuries sustained by Plaintiffs, and therefore, Plaintiffs cannot recover against SIG.

## SEVENTH AFFIRMATIVE DEFENSE
### (Pre-existing condition)

Any disability, disfigurement or injury claims alleged by Plaintiffs are a result of a pre-existing condition or were caused by a subsequent injury or injuries and were not caused or aggravated by any act of negligence on the party of SIG.

## EIGHTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiffs' claims and damages may be limited, in whole or in part, by the Plaintiffs' failure to mitigate their damages. Plaintiff failed to follow a proper post-operative care protocol and/or sought and underwent contra-indicated post-operative medical care and treatment that caused, aggravated, and/or exacerbated their alleged injuries and damages.

## NINTH AFFIRMATIVE DEFENSE
### (Assumption of Risk)

Plaintiffs assumed the risk of the injuries and damages claimed as a result of the events set forth in the Amended Complaint and his assumption of risk bars or reduces his recovery on all non-negligence claims.

## TENTH AFFIRMATIVE DEFENSE
### (Setoff)

SIG invokes its right to a reduction in any dollar verdict which may be rendered in this case by credit for payments made to the Plaintiffs by other persons or entities, or by percentage reductions to which SIG would be entitled as a result of a jury finding against Plaintiffs or parties other than SIG. SIG reserves its right to submit issues against parties, including the Plaintiffs, and other parties who may be absent from this case at the time the case is submitted to the jury.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Compliance with Government Standards)

The subject firearm and all component parts complied with all federal, state, and local codes, government and industry standards, regulations, specifications and statutes regarding the manufacture, sale and use of the product at all times pertinent to this action.

## TWELFTH AFFIRMATIVE DEFENSE
### (Misuse/Abuse)

Plaintiffs are not entitled to recover, or their damages may be reduced proportionally, to the extent any alleged damages or injuries were caused by the misuse, abuse, failure to properly maintain or care for the products at issue herein, or substantial modification of the product.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (State of the Art)

Plaintiffs cannot recover herein against SIG because the design, manufacture, packaging, warning and labeling of the product described in Plaintiffs' Amended Complaint was in conformity with the generally recognized state of the art, practice, custom, and knowledge at the time such product was designed, manufactured, packaged and labeled.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Contributory/Comparative Negligence)

Plaintiffs' own negligence proximately caused the injuries complained of herein.  In this regard, and generally, SIG hereby invokes the doctrine of contributory/comparative negligence, which reduces any recovery by Plaintiffs proportionately to the fault attributed to Plaintiffs.

## FIFTEENTH AFFIRMATIVE  DEFENSE
### (No Duty to Plaintiff)

SIG denies that it owed a duty to Plaintiffs as alleged; however, if it is determined that SIG owed Plaintiffs a duty, SIG denies that the duty was breached. SIG was not negligent and acted with reasonable care under the facts and circumstances of this litigation.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiffs' claims are barred by the applicable statute of limitation.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Not Unreasonably Dangerous)

Plaintiffs' recovery is barred, diminished or reduced to the extent that the dangers, if any, associated with the product referenced in Plaintiffs' Amended Complaint, were not unreasonable, were known by the Plaintiff, constituted commonly or generally known dangers, were open or obvious, and because Plaintiff was a knowledgeable user of the product.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Limitations on Damages)

Plaintiffs' claims and alleged damages are barred, reduced and/or limited pursuant to applicable statutory and common law regarding limitations of awards and damages, caps on recovery, setoffs, and apportionment.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Right to Amend)

SIG reserves the right to amend its answer and plead additional or more specific affirmative defenses as warranted by the facts determined through the conclusion of the discovery process.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant hereby preserves any and all defenses under *Tincher v. Omega Flex, Inc*., 104 A.3d 328 (Pa. 2014).

**WHEREFORE,** having fully answered Plaintiffs' Amended Complaint, Sig Sauer, Inc., respectfully requests this Court to enter an Order:

A.    Dismissing Plaintiffs' Amended Complaint with prejudice;

B.    Awarding SIG its costs incurred in defending this action; and

C.    Awarding SIG such other relief as this Court deems just and proper.

## JURY DEMAND

Defendant Sig Sauer, Inc. requests a trial by jury on all issues so triable.  Fed. R. Civ.

P. 38.

Respectfully submitted,

**LITTLETON JOYCE UGHETTA & KELLY LLP**

By:   /s/Kristen E. Dennison, Esquire
        Kristen E. Dennison, Esquire

        201 King of Prussia Road, Suite 220
        Radnor, PA 19087
        Attorney ID No.: 86648
        Email: kristen.dennison@littletonjoyce.com
        Phone: (484) 254-6220
        Fax: (484) 254-6221

        Attorney for Defendant,
Dated: October 17, 2024        Sig Sauer, Inc.

## **CERTIFICATE OF SERVICE**

I, Kristen E. Dennison, Esquire, hereby certify that on this date a true and correct copy of the attached document was filed electronically. Notice of this filing is being electronically sent to all registered parties' counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully submitted,

**LITTLETON JOYCE UGHETTA & KELLY LLP**

By:  /s/Kristen E. Dennison, Esquire
Kristen E. Dennison, Esquire

Attorney for Defendant,
Sig Sauer, Inc.

Dated: October 17, 2024