# EXHIBIT
# 1

## Haaz, Sam

| | |
|---|---|
| **From:** | Guevara, Camila |
| **Sent:** | Monday, December 23, 2024 1:32 PM |
| **To:** | Elisa M. Boody; LPJUKSIG@littletonpark.com; SMBSIG; Lopane, Patricia |
| **Cc:** | SMBSIG |
| **Subject:** | Hall v. Sig Sauer, Inc., at al.- Plaintiffs First Set of Discovery to Cabela's Defendants |
| **Attachments:** | Hall(12-23)(2024)-ROGS to Cabelas.pdf; Hall(12-23)(2024)-RFA to Cabelas.pdf; Hall(12-23)(2024)-RPDs to Cabelas.pdf |

Counselors,

Please see attached Plaintiffs' first set of discovery requests to Cabela's Defendants.

*Please respond according to the Rules of the Court. A hard copy will not follow.*

**Camila Guevara**
Paralegal



One Liberty Place, 1650 Market Street, 52nd Floor,
Philadelphia, PA 19103
+1 215-606-3575 (office) | 215-496-0999 (fax)
cguevara@smbb.com | www.smbb.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES HALL and NANCI HALL, h/w**<br><br>　　　　**Plaintiffs.**<br>　　**v.**<br><br>**SIG SAUER, INC., CABELA'S LLC, AMERICAN SPORTSMAN HOLDINGS, CO., BASS PRO SHOPS, INC., TMBC, LLC, BASS PRO OUTDOOR WORLD, LLC, CABELA'S INCORPORATED, CABELA'S AND CABELAS'S WHOLESALE INC.**<br><br>　　　　**Defendants.** | **CIVIL CASE NUMBER:**<br><br>**Case 3:23-cv-00978-KM** |

**PLAINTIFFS JAMES HALL AND NANCI HALL'S FIRST**
**REQUESTS FOR ADMISSIONS TO CABELA'S DEFENDANTS**

Please take notice that Plaintiffs, by and through their attorneys, Saltz Mongeluzzi & Bendesky P.C., request that Defendant answers the following Requests for Admissions within thirty (30) days pursuant to Rules 26 & 36 of the Federal Rules of Civil Procedure.

Please take further notice that this request should be regarded as continuing and requiring prompt supplemental production in the event that any of the requested documents are located, additional responsive documents are received, or documents falling within the described category are otherwise obtained at any time prior to trial.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. Except as the context may otherwise require, the following definitions shall apply to these Interrogatories:

1.      "Lawsuit" means this lawsuit with case number and caption above.

2.      "You," "Your," "Defendants" or "Cabela's Defendants",  means Defendants Cabela's, LLC, American Sportsman Holdings, Co., Bass Pro Shops, Inc., TMBC, LLC, Bass Pro Outdoor World, LLC, Cabela's Inc., Cabela's, and Cabela's Wholesale Inc., Inc. as well as their agents, servants, employees, and attorneys, and persons acting for or on its behalf.

3.      "Plaintiff" means James Hall and "Plaintiffs" means Mr. Hall and his wife, Nanci.

4.      "Subject Incident" means the incident during which the Plaintiff's P320 model pistol discharged without a deliberate trigger pull.

5.       "Subject Pistol" means the Sig Sauer P320 model pistol that discharged during the Subject Incident.

6.      "Subject Holster" means the holster for the Subject Pistol which may have been in use at the time of the Subject Incident.

7.      "P320" means the SIG P320 Pistol and any and all of its variants including, but not limited to the full-size, compact, carry, x-compact, sub-compact, nitron, x-series, v-tac, or any other non-military variant of the P320.

8.      "Tabbed Trigger" or "Tabbed Safety Trigger" means the trigger option that Sig Sauer included in its original design of the P320 and is referenced in marketing materials for the P320 in which a tab or blade protruding from the middle of the trigger must be depressed for trigger actuation.

9.      "Unintended Discharge" means any time a gun discharges a bullet and/or strikes the primer part of a cartridge, that was not specifically intended by the person in

possession of the gun. The term Unintended Discharge shall include negligent discharge, unintentional discharge, uncommented discharge, and any situation where an individual alleges a gun fired a projectile without the possessor intending to.

10.      "Drop Fire" means any time a gun is not in control of either hand, falls from any height and collides with the ground or an object and, immediately following the collision, the gun discharges a projectile and/or strikes the primer part of a cartridge.

11.      "Voluntary Upgrade Program" means Sig Sauer's program, first announced to the public in an August 8, 2017 press release in which Sig Suaer admitted "dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge" and Sig Suaer offered to provide modifications to existing Sig Sauer P320's to address the drop fire vulnerability by installing, among other things, a trigger with a reduced mass.

12.      "Civilian" means any person who is not employed by or in the military or who is not employed by a Law Enforcement Agency.

13.      "Identify" or "describe" means to provide a complete description sufficient to permit the interrogating party to locate and identify the subject matter of any request. When used in relation to any person, "Identify" or "describe" means to provide the full name, present or last known address, present or last known telephone number, employment, and current and former job titles if known; when used in relation to a place, "identify" or "describe" means to provide the complete address of any place; and when used in relation to an object or thing, "identify" or "describe" means to provide a complete, particular description of such object or thing, such as by date, type, location, source and physical description.

14.      "Each" shall be construed as "each and every."

15. "Any" shall be construed as "all" and vice versa.

16. The use of singular form of any word includes the plural and vice versa.

17. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be outside of its scope.

## INSTRUCTIONS

**Cabela's Defendants shall each separately respond to each of the Requests below. To the extent Cabela's Defendants seek to provide the same response for multiple parties, each response must indicate specifically on whose behalf the response is made.**

## REQUESTS FOR ADMISSIONS

1. Prior to Sig Sauer announcing its Voluntary Upgrade Program for the Sig Sauer P320 on August 7, 2017, Cabela's Defendants were aware of reports that the P320 would discharge when dropped.

**RESPONSE:**

2. Prior to Sig Sauer publicly announcing its Voluntary Upgrade Program for the Sig Sauer P320, it made Cabela's Defendants aware of its intentions to offer the Voluntary Upgrade Program.

**RESPONSE:**

3. On or before August 8, 2017, Cabela's became aware that Sig Sauer issued a Voluntary Upgrade Program for the Sig Sauer P320 because dropping the P320 may cause an unintentional discharges.

**RESPONSE:**

4.     At the time the Voluntary Upgrade Program was publicly announced, Cabela's sold Sig Sauer P320's.

**RESPONSE:**

5.     At the time the Voluntary Upgrade Program was publicly announced, Cabela's had thousands of pre-upgrade P320's in its inventory that it offered for sale to the public.

**RESPONSE:**

6.     In August of 2017, Cabela's Defendants were aware that the Voluntary Upgrade Program was to change components of the Sig Sauer P320 because, when dropped at certain angles, the pre-upgrade P320's could fire when dropped.

**RESPONSE:**

7.     After the Voluntary Upgrade Program was announced, Cabela's Defendants continued to sell pre-upgrade P320's to the public.

**RESPONSE:**

8.     After the Voluntary Upgrade Program was announced, Cabela's Defendants continued to sell pre-upgrade P320's to the public without requiring any written notice be given to its P320 customers of the Voluntary Upgrade Program at the time of purchase.

**RESPONSE:**

9.     After the Voluntary Upgrade Program was announced, Cabela's Defendants continued to sell pre-upgrade P320's to the public without requiring any oral notice be given to its P320 customers of the Voluntary Upgrade Program at the time of purchase.

**RESPONSE:**


     10.    Cabela's Defendants have not sent any of the pre-upgrade P320ies it ever purchased to Sig Sauer for the Voluntary Upgrade Program or for installation of the VUP components.

**RESPONSE:**


     11.    Cabela's Defendants purchases firearms from individual members of the public and offers used firearms for resale to its customers.

**RESPONSE:**


     12.    When Cabela's Defendants purchases a used firearm, employees or agents of Cabela's Defendants inspects the used firearm at the time of purchase.

**RESPONSE:**


     13.    When Cabela's Defendants purchases a used firearm, employees or agents of Cabela's Defendants inspects the used firearm at the time of purchase to ensure that they are not purchasing and reselling guns that are defective.

**RESPONSE:**


     14.    Cabela's Defendants purchased the subject gun and performed an inspection on it to ensure that it was not defective.

**RESPONSE:**


     15.    After purchasing the subject gun and before resale to James Hall, Cabela's Defendants were aware that the subject gun was a pre-upgrade P320.

**RESPONSE:**

16.     Cabela's Defendants could have sent the subject gun to Sig Sauer pursuant to the Voluntary Upgrade Program and have the Voluntary Upgrade components installed in the subject gun before resale.

**RESPONSE:**

17.     Cabela's Defendants did not send the subject gun to Sig Sauer for the Voluntary Upgrade Program and did not have the Voluntary Upgrade components installed in the subject gun before resale to Mr. Hall.

**RESPONSE:**

18.     Cabela's Defendants sold the subject P320 to James Hall knowing that it was a pre-upgrade P320 that was eligible for the Voluntary Upgrade Program.

**RESPONSE:**

19.     Cabela's Defendants are not aware of any written notifications, warnings, or instructions provided to James Hall regarding the Voluntary Upgrade Program by Cabela Defendants.

**RESPONSE:**

20.     Cabela's Defendants are not aware of any written notifications, warnings, or instructions provided to James Hall regarding the fact that the pre-upgrade P320 it sold him could fire when dropped at certain angles.

**RESPONSE:**

21.     Cabela's Defendants received communications directly from Sig Sauer regarding the Voluntary Upgrade Program in 2017.

**<u>RESPONSE:</u>**

22.     Cabela's Defendants have sold products that have been subject to a recall from the Consumer Product Safety Commission ("CPSC").

**<u>RESPONSE:</u>**

23.     When the CPSC recalls a product that is sold by Cabela's Defendants, Cabela's Defendants will no longer sell the recalled product to the public.

**<u>RESPONSE:</u>**

24.     Cabela's Defendants have policies and procedures that dictate its response once the CPSC has issued a recall of a product that they sell.

**<u>RESPONSE:</u>**

25.     Cabela's Defendants have sold firearms, firearm parts, holsters, and/or ammunition for which the manufacturer has issued a recall.

**<u>RESPONSE:</u>**

26.     Cabela's Defendants have policies and procedures that dictate their response once a manufacturer issues a recall of a product sold by Cabela's Defendants.

**<u>RESPONSE:</u>**

**SALTZ MONGELUZZI & BENDESKY P.C.**
Attorney for Plaintiffs

By:      */s/Robert W. Zimmerman*, **Esq.**
               Robert W. Zimmerman, Esq.

Dated: December 23, 2024

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES HALL and NANCI HALL, h/w**<br><br>**Plaintiffs.**<br><br>v.<br><br>**SIG SAUER, INC., CABELA'S LLC, AMERICAN SPORTSMAN HOLDINGS, CO., BASS PRO SHOPS, INC., TMBC, LLC., BASS PRO OUTDOOR WORLD, LLC, CABELA'S INCORPORATED, CABELA'S AND CABELAS'S WHOLESALE INC.**<br><br>**Defendants.** | **CIVIL CASE NUMBER:**<br><br>**Case 3:23-cv-00978-KM** |

## PLAINTIFFS JAMES HALL AND NANCI HALL'S
## <u>FIRST SET OF INTERROGATORIES TO CABELA'S DEFENDANTS</u>

Please take notice that Plaintiffs, by and though their attorneys, Saltz Mongeluzzi & Bendesky P.C., request that Defendant answers the following Interrogatories within thirty (30) days pursuant to Rules 26 & 33 of the Federal Rules of Civil Procedure.

Please take further notice that this request should be regarded as continuing and requiring prompt supplemental production in the event that any of the requested documents are located, additional responsive documents are received, or documents falling within the described category are otherwise obtained at any time prior to trial.

## <u>DEFINITIONS</u>

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. Except as the context may otherwise require, the following definitions shall apply to these Interrogatories:

1.     "Lawsuit" means this lawsuit with case number and caption above.

2.     "You," "Your," "Defendants" or "Cabela Defendants",  means Defendants Cabela's, LLC, American Sportsman Holdings, Co., Bass Pro Shops, Inc., TMBC, LLC, Bass Pro Outdoor World, LLC, Cabela's Inc., Cabela's, and Cabela's Wholesale Inc., Inc. as well as their agents, servants, employees, and attorneys, and persons acting for or on its behalf.

3.     "Plaintiff" means James Hall and "Plaintiffs" means Mr. Hall and his wife, Nanci.

4.     "Subject Incident" means the incident during which the Plaintiff's P320 model pistol discharged without a deliberate trigger pull.

5.      "Subject Pistol" means the Sig Sauer P320 model pistol that discharged during the Subject Incident.

6.     "Subject Holster" means the holster for the Subject Pistol which may have been in use at the time of the Subject Incident.

7.     "P320" means the SIG P320 Pistol and any and all of its variants including, but not limited to the full-size, compact, carry, x-compact, sub-compact, nitron, x-series, v-tac, or any other non-military variant of the P320.

8.     "Tabbed Trigger" or "Tabbed Safety Trigger" means the trigger option that Sig Sauer included in its original design of the P320 and is referenced in marketing materials for the P320 in which a tab or blade protruding from the middle of the trigger must be depressed for trigger actuation.

9.     "Unintended Discharge" means any time a gun discharges a bullet and/or strikes the primer part of a cartridge, that was not specifically intended by the person in possession of the gun.  The term Unintended Discharge shall include negligent discharge, unintentional

discharge, uncommented discharge, and any situation where an individual alleges a gun fired a projectile without the possessor intending to.

10.     "Drop Fire" means any time a gun is not in control of either hand, falls from any height and collides with the ground or an object and, immediately following the collision, the gun discharges a projectile and/or strikes the primer part of a cartridge.

11.     "Voluntary Upgrade Program" means Sig Sauer's program, first announced to the public in an August 8, 2017 press release in which Sig Suaer admitted "dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge" and Sig Suaer offered to provide modifications to existing Sig Sauer P320's to address the drop fire vulnerability by installing, among other things, a trigger with a reduced mass.

12.     "Civilian" means any person who is not employed by or in the military or who is not employed by a Law Enforcement Agency.

13.     "Identify" or "describe" means to provide a complete description sufficient to permit the interrogating party to locate and identify the subject matter of any request. When used in relation to any person, "Identify" or "describe" means to provide the full name, present or last known address, present or last known telephone number, employment, and current and former job titles if known; when used in relation to a place, "identify" or "describe" means to provide the complete  address of any place; and when used in relation to an object or thing, "identify" or "describe"  means to provide a complete, particular description of such object or thing, such as by date, type,  location, source and physical description.

14.     "Each" shall be construed as "each and every."

15.     "Any" shall be construed as "all" and vice versa.

16.     The use of singular form of any word includes the plural and vice versa.

17.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be outside of its scope.

## INSTRUCTIONS

Cabela's Defendants shall each separately respond to each of the Interrogatories below.  To the extent Cabela's Defendants seek to provide the same response for multiple parties, each response must indicate specifically on whose behalf the response is made.

## INTERROGATORIES

1.      Describe your company's corporate structure, including parent companies, subsidiaries, and affiliates involved in the sale or distribution of firearms and include in the corporate structure all named Cabela's Defendants.

**RESPONSE:**

2.      Identify all federal and state licenses you hold to distribute firearms that permitted you to sell firearms as of the date of sale of the subject firearm.

**RESPONSE:**

3.      Identify your role in the distribution of the subject gun including dates of acquisition, the cost of acquisition, and forms and/or paperwork the seller filled out when Cabela's acquired the subject gun, as well as the date of sale, the sale price, and the forms and/or paperwork Mr. Hall filled out when Cabela's acquired the subject gun.

**RESPONSE:**

4.      Describe when and how you first became aware of the defect alleged in this lawsuit.

**RESPONSE:**

 

 

5.      Describe when and how you first became aware of the Voluntary Upgrade Program and all steps taken in response once you became aware of the Voluntary Upgrade Program.

**RESPONSE:**

 

 

6.      Describe any testing or quality control procedures you conducted on the P320 from 2014 – 2018.

**RESPONSE:**

 

 

7.      Identify all insurance policies that provide coverage for claims related to defective firearms products during the relevant time frame.

**RESPONSE:**

 

 

8.      Identify any prior lawsuits, claims, or settlements involving defective firearms distributed by you from 2014 – 2024.

**RESPONSE:**

 

 

9.      State whether you have been subject to any government investigations related to defective firearms, including details of those investigations.

**RESPONSE:**

10.     Describe any notices, warnings, or instructions provided to your customers regarding the proper use or maintenance of the firearm.

**RESPONSE:**


11.     Identify all warranties or disclaimers you provided with the firearms at the time of sale in 2017-2018.

**RESPONSE:**


12.     In the past ten years, identify any product you offered for sale at a time when the Consumer Product Safety Commission ("CPSC") announced recall for that product.


**RESPONSE:**


13.     Identify all policies the relate to or involve your response once the CPSC announces a recall of a product sold in any of your retail or online stores.


**RESPONSE:**


14.     Does Cabela's Defendants provide any warnings, instructions, alerts, or notifications to its customers about any product beyond that which is provided by the manufacturer?  If so, identify the specific product, the manufacturer of the product and the additional warnings provided by Cabela's Defendants.


**RESPONSE:**

15.     Provide the date upon which Cabela's Defendants first became aware of the Sig Sauer Voluntary Upgrade Program for the P320 pistol and how Cabela's was notified.


**RESPONSE:**


16.     After Cabela's Defendants were made aware of the Voluntary Upgrade Program, what did Cabela's Defendants do with its existing inventory of pre-upgrade Sig Sauer P320's that were eligible for, but had yet to receive the Voluntary Upgrade?


**RESPONSE:**


17.     Did Cabela's Defendants continue to sell pre-upgrade P320's to the public after the announcement of the VUP?  If so, for how long after the VUP program was announced did Cabela's Defendants continue to sell pre-upgrade P320's?


**RESPONSE:**


18.     What specifically did Cabela's Defendants do to notify or warn customers purchasing pre-upgrade P320's from Cabela's Defendants that the gun sold could discharge when dropped at certain angles and/or that the P320 sold was eligible for the VUP?


**RESPONSE:**


19.     What training or documentation did Cabela's Defendants provide to its firearms salesforce and/or managers, agents, employees, or representative about the sale of pre-upgrade P320's after it became aware of the VUP?


**RESPONSE:**

20.     Identify the following Cabela's Defendant employee by name, last known address and job title at the time of the purchase of the subject gun: the individual who was the sales associate who sold the subject gun to James Hall and the highest ranking store manager who was working on-site at the time and location where the subject gun was purchased.


**RESPONSE:**


21.     Identify the Cabela's Defendants employee who was the lead buyer and/or account manager for Sig Sauer and specifically the Sig Sauer P320 and his or her counterpart at Sig Sauer from whom Cabela's negotiated and purchased the P320ies it sold from 2014 – 2018.


**RESPONSE:**


22.     Identify by name, job title, and email address all individuals employed by Cabela's Defendants who corresponded with anyone with an @sigsauer.com domain email address from August 1, 2017 – September 30, 2017.


**RESPONSE:**


23.     Identify what if any written warnings or notifications were provided to Jame Hall when he purchased his Sig Sauer P320 from Cabela's Defendants regarding the P320 he purchased?


**RESPONSE:**


24.     Identify all policies, procedures, SOPs and training materials that related to Cabela's Defendants purchase, inspection and resale of used firearms?


**RESPONSE:**

25.     Did Cabela's Defendants receive any complaints about any P320 it sold to any customer from 2014 – 2018 that relate to a drop-fire or unintended discharge?  If so, identify the date of the complaint, how it was transmitted, the name of the person making the complaint and the substance of the complaint.


**RESPONSE:**


SALTZ MONGELUZZI & BENDESKY P.C.
Attorney for Plaintiffs

By:      */s/Robert W. Zimmerman*, Esq.
              Robert W. Zimmerman, Esq.

Dated: December 23, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES HALL and NANCI HALL, h/w**<br><br>**Plaintiffs.**<br><br>**v.**<br><br>**SIG SAUER, INC., CABELA'S LLC, AMERICAN SPORTSMAN HOLDINGS, CO., BASS PRO SHOPS, INC., TMBC, LLC., BASS PRO OUTDOOR WORLD, LLC, CABELA'S INCORPORATED, CABELA'S AND CABELAS'S WHOLESALE INC.**<br><br>**Defendants.** | **CIVIL CASE NUMBER:**<br><br>**Case 3:23-cv-00978-KM** |

## PLAINTIFFS JAMES HALL AND NANCI HALL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO CABELA'S DEFENDANTS

Please take notice that Plaintiffs, by and though their attorneys, Saltz Mongeluzzi & Bendesky P.C., request that Defendants Cabela's, LLC, American Sportsman Holdings, Co., Bass Pro Shops, Inc., TMBC, LLC, Bass Pro Outdoor World, LLC, Cabela's Inc., Cabela's, and Cabela's Wholesale Inc. (collectively, "Cabela's Defendants") answers the following Requests within thirty (30) days pursuant to Rules 26 & 34 of the Federal Rules of Civil Procedure.

Please take further notice that these request should be regarded as continuing and requiring prompt supplemental production in the event that any of the requested documents are located, additional responsive documents are received, or documents falling within the described category are otherwise obtained at any time prior to trial.

## INSTRUCTIONS

Unless otherwise specified, the following Requests seek all responsive documents created, generated or received by Cabela's Defendants. These document requests are continuing in nature, and you must supplement your production in a timely manner pursuant to Rule 26(e).

1.     The singular and plural forms of words are used interchangeably, as are the masculine and feminine forms and the present and past tenses of verbs.

2.     Your response shall include all documents and information within your possession, custody, or control or which are otherwise available to you, regardless of whether such documents are possessed by you or your employees, agents, parent companies, subsidiaries, affiliates, investigators, predecessors, successors, representatives, or by your attorneys or their employees or investigators.

3.     If you claim that the document request calls for information that you contend is privileged, please identify the document and/or redaction by Bates numbered page, set forth the privilege claimed, the basis or explanation of your claim of privilege, and furnish a list identifying each communication or document for which the privilege is claimed, together with the following information:

   (a)     a brief description of the nature and subject matter of the document or tangible thing, including the title and type of document (i.e., whether it is a letter, memorandum, drawing, etc.) or tangible thing;

   (b)     the document's or tangible thing's date of creation;

   (c)     the identity of the author(s) or creator(s);

   (d)     the identity of the recipients and/or the person(s) to whom the document is addressed or to whom the tangible thing has been provided, including all person(s) who received copies, reproductions, or other representations of the document or tangible thing;

   (e)     the total number of pages for the document.

4.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, you must produce the documents requested as they are kept in the usual course of business or must organize and label

them to correspond with each document requests to which they are submitted as being responsive. If the requested documents are maintained in a paper file, you must also produce the file folder, folder tab or container, together with all labels and notations. Documents attached to each other should not be separated. If any portion of any document is responsive to any document request, then the entire document must be produced. In addition, specifically identify the location and custodian of each document produced by means of an index of production numbers.

5. **All documents maintained in electronic form shall be produced either (1) pursuant to stipulation and/or order regarding electronic discovery or, if no such order or agreement of the parties is entered or in place as of the date on which your responses to the Requests are due, (2) as Tag Image File Format ("TIFF") images with all available metadata fields. This is a standard file format for upload into document review software. The production of document shall be made available by secure link to a load file.**

6. Production of responsive documents is required regardless of whether the custodian purported to "delete" such documents, if such documents are capable of being retrieved or restored.

7. If you cannot comply in full with any of the following document requests or with any of these instructions, you must comply to the greatest extent possible and provide a detailed explanation as to why full compliance is not possible.

8. If you object to production on any basis other than privilege, state your objection(s) and indicate whether you are complying with the request in whole or in part.

9. If any document request is objected to on grounds of over-breadth, specifically state the manner in which it is overly broad and respond to the Requests as narrowed to conform to such

objection. If you cannot fully respond, or if you object in part, to any of these Requests, you are nevertheless required to respond to the remaining portions.

10. **Cabela's Defendants shall each separately respond to each of the Requests below. To the extent Cabela's Defendants seek to provide the same response for multiple parties, each response must indicate specifically on whose behalf the response is made.**

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. Except as the context may otherwise require, the following definitions shall apply to these Interrogatories:

1. "Lawsuit" means this lawsuit with case number and caption above.

2. "You," "Your," "Defendants" or "Cabela's Defendants", means Defendants Cabela's, LLC, American Sportsman Holdings, Co., Bass Pro Shops, Inc., TMBC, LLC, Bass Pro Outdoor World, LLC, Cabela's Inc., Cabela's, and Cabela's Wholesale Inc., Inc. as well as their agents, servants, employees, and attorneys, and persons acting for or on its behalf.

3. "Plaintiff" means James Hall and "Plaintiffs" means Mr. Hall and his wife, Nanci.

4. "Subject Incident" means the incident during which the Plaintiff's P320 model pistol discharged without a deliberate trigger pull.

5. "Subject Pistol" means the Sig Sauer P320 model pistol that discharged during the Subject Incident.

6. "Subject Holster" means the holster for the Subject Pistol which may have been in use at the time of the Subject Incident.

7. "P320" means the SIG P320 Pistol and any and all of its variants including, but not limited to the full-size, compact, carry, x-compact, sub-compact, nitron, x-series, v-tac, or any other non-military variant of the P320.

8. "Tabbed Trigger" or "Tabbed Safety Trigger" means the trigger option that Sig Sauer included in its original design of the P320 and is referenced in marketing materials for the P320 in which a tab or blade protruding from the middle of the trigger must be depressed for trigger actuation.

9. "Unintended Discharge" means any time a gun discharges a bullet and/or strikes the primer part of a cartridge, that was not specifically intended by the person in possession of the gun. The term Unintended Discharge shall include negligent discharge, unintentional discharge, uncommented discharge, and any situation where an individual alleges a gun fired a projectile without the possessor intending to.

10. "Drop Fire" means any time a gun is not in control of either hand, falls from any height and collides with the ground or an object and, immediately following the collision, the gun discharges a projectile and/or strikes the primer part of a cartridge.

11. "Voluntary Upgrade Program" of "VUP" means Sig Sauer's program, first announced to the public in an August 8, 2017 press release in which Sig Suaer admitted "dropping the P320 beyond U.S. standards for safety may cause an unintentional discharge" and Sig Suaer offered to provide modifications to existing Sig Sauer P320's to address the drop fire vulnerability by installing, among other things, a trigger with a reduced mass.

12. "Pre-upgrade" and "post-upgrade": pre-upgrade refer to Sig Sauer P320s manufactured on or before August 7, 2017 that had not gone through the VUP; post-upgrade guns

are those that either received the VUP or were manufactured after August 7, 2017 and included the VUP components when manufactured.

13.     "Civilian" means any person who is not employed by or in the military or who is not employed by a Law Enforcement Agency.

14.     "Identify" or "describe" means to provide a complete description sufficient to permit the interrogating party to locate and identify the subject matter of any request. When used in relation to any person, "Identify" or "describe" means to provide the full name, present or last known address, present or last known telephone number, employment, and current and former job titles if known; when used in relation to a place, "identify" or "describe" means to provide the complete address of any place; and when used in relation to an object or thing, "identify" or "describe" means to provide a complete, particular description of such object or thing, such as by date, type, location, source and physical description.

15.     "Each" shall be construed as "each and every."

16.     "Any" shall be construed as "all" and vice versa.

17.     The use of singular form of any word includes the plural and vice versa.

18.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be outside of its scope.

<u>**REQUESTS**</u>

1.     Provide all documents referenced in responding to the interrogatories above.

<u>**RESPONSE:**</u>

2.      Provide a corporate structure visual representation, corporate tree and/or flow chart, including parent companies, subsidiaries, and affiliates involved in the sale or distribution of firearms identifying each Cabela's Defendants.

**RESPONSE:**

3.      Provide copies of all federal and state licenses you hold to distribute firearms that permitted the Cabela's store that sold the subject firearm to sell it to Plaintiff on the date of sale.

**RESPONSE:**

4.      Provide all paperwork in your possession for the subject firearm which includes all sales documents including receipts, background checks, and all other paperwork created when the subject firearm was sold, as well as documents indicating who you purchased the subject gun from, the cost of said purchase, the date you received it, and records of all locations where the subject firearm was ever transported, and all documents and things that were included in Cabela's acquisition of the subject gun (i.e. case, manual, magazines).

**RESPONSE:**

5.      Provide copies of all agreements between you and Sig Sauer regarding the purchase, sale, marketing and distribution of their firearms and/or the P320 specifically.

**RESPONSE:**

6.      Provide any and all documents, correspondence, reports and/or findings from any analysis or testing that Cabela's or any of its employees, agents or assigns performed on the Sig Sauer P320.

**RESPONSE:**

7.     Provide any and all documents, correspondence, reports and/or findings from any analysis or testing that anyone performed on the Sig Sauer P320 that Cabela's Defendants had in their possession from 2014 – 2018.

**RESPONSE:**

8.     Provide all policies, procedures, SOPs and training materials that related to Cabela's Defendants' purchase, inspection and resale of used firearms?

**RESPONSE:**

9.     Provide all policies, procedures, SOPs and training materials for Cabela's Defendants' salesforce and/or managers, agents, employees, or representative about the sale of pre and post upgrade P320ies.

**RESPONSE:**

10.     Provide all policies, procedures, SOPs and training materials that relate to Cabela's Defendants' response once it becomes aware of a CPSC recall of a product it sells.

**RESPONSE:**

11.     Provide all policies, procedures, SOPs and training materials that relate to Cabela's Defendants' quality control testing or analysis regarding the safety of the products it offers for sale.

**RESPONSE:**

12.     Provide all written warnings, alerts or notifications provided to purchasers of the Sig Sauer P320 from Cabela's Defendants in 2017 and 2018.

**RESPONSE:**


13.     Provide all documents, training videos, PowerPoint presentations, marketing materials, talking points, facts sheets, manuals, Q and A's, and any other documents provided to Cabela's Defendants by Sig Sauer that relate to the P320 from 2014 – 2018.

**RESPONSE:**


14.     Provide all correspondence between Cabela's Defendants and Sig Sauer from August 1, 2017 – October 31, 2017.

**RESPONSE:**


15.     Provide all correspondence between Cabela's Defendants and Sig Sauer that relate to drop-fire incidents involving the P320, unintended discharges incidents involving the P320, the Voluntary Upgrade Program, and/or concerns over the safety of the P320.

**RESPONSE:**


16.     Provide all customer complaints that any Cabela's Defendant's received regarding any unintended discharge incident, drop-fire incident, or concern over the safety of the Sig Sauer P320.

**RESPONSE:**

17.     Provide documents and/or statistics or metrics that show the exact amount of Sig Sauer P320's that Cabela's Defendants sent back to Sig Sauer to receive the Voluntary Upgrade Program.

**RESPONSE:**

18.     Provide documents and/or statistics or metrics that show the exact amount of Sig Sauer P320's Cabela's Defendants had their collective inventory for each month from July 2017 – March 2018.

**RESPONSE:**

19.     Provide any and all recorded audio and/or audiovisual footage or recordings of Mr. Hall in the parking lot or inside the Cabela's store where he purchased the subject gun on the date of purchase.

**RESPONSE:**

**SALTZ MONGELUZZI & BENDESKY P.C.**
Attorney for Plaintiffs

By:     */s/Robert W. Zimmerman*, **Esq.**
        Robert W. Zimmerman, Esq.

Dated: December 23, 2024