UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES HALL, et al.,

        Plaintiffs,

        v.

SIG SAUER, INC.,

        Defendant.

CIVIL ACTION NO. 3:23-CV-00978

(SAPORITO, J.)

## MEMORANDUM

Now before the Court are two motions filed by the defendant, Sig Sauer. On November 11, 2025, Sig Sauer filed a motion for reconsideration concerning the Court's prior order of October 28, 2025, compelling the production of customer information relating to names and contact information of customers who purchased pre-upgrade P320 pistols with reported drop fires, and in the alternative asked to certify the October 28, 2025, order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Doc. 89) (citing (Doc. 87)). On November 26, 2025, Sig Sauer moved for a protective order with respect to the proposed deposition of Sig Sauer's CEO, Ron Cohen. (Doc. 95). The motions have been briefed

by the parties[1] (Doc. 90; Doc. 92; Doc. 103; Doc. 108) and are now ripe for review. We shall analyze each motion individually.

### I.    Motion for Reconsideration

Typically, the scope of a Rule 59(e) motion to alter or amend final judgment "is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). A motion for reconsideration under Rule 59(e) is used "'to correct manifest errors of law or fact to present newly discovered evidence.'" *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the

---

[1] On January 15, 2026, we ordered that we would defer ruling on Sig Sauer's motion for reconsideration until after the filing of the Second Amendment Foundation's motion for leave to file an amicus brief in support of the motion for reconsideration. (Doc. 111). On January 27, 2026, we ordered that we would also defer ruling on Sig Sauer's motion for reconsideration until after the filing of the National Rifle Association's motion for leave to file an amicus brief in support of the motion for reconsideration. (Doc. 116). On February 17, 2026, amici curiae, the Second Amendment Foundation and the National Rifle Association, jointly filed a motion for leave to file an amici brief in support of Sig Sauer's motion for reconsideration. (Doc. 119). We granted that motion on February 18, 2026 (Doc. 120), and those non-parties filed their amici brief that same day. (Doc. 121). The plaintiffs have filed their brief in opposition to the amici brief (Doc. 122), and Sig Sauer has also filed a reply brief. (Doc. 125).

availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Id.* "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "Likewise, reconsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *York Int'l Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 361 (M.D. Pa. 2015). "Reconsideration of judgment is an extraordinary remedy; therefore, such motions are to be granted sparingly." *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

Sig Sauer moves for reconsideration under the third ground for reconsideration, arguing that the production of customer information is a clear error of law and will result in manifest injustice. (Doc. 90). Sig Sauer appears to make a similar argument as it did during a telephonic discovery conference between the parties when the Court originally considered the issue of whether to order the production of information relating to customers who purchased pre-upgrade P320 pistols with

reported drop fires. (Doc. 86, at 4). It argues now, as it did during the conference, that the production of its customers' names and contact information violates the customers' privacy rights and may have a potential chilling effect on the customers' Second Amendment rights to bear arms. (*Id.*). Amici curiae, the Second Amendment Foundation and the National Rifle Association, have jointly filed an amici brief in support of this contention. (Doc. 121). The amici brief is informative regarding the parties' perspectives concerning the third-party interests of gun owners. It argues, among other things, that privacy in firearm ownership has always been a fundamental right of the Second Amendment and that gun owners have a reasonable expectation of privacy concerning the purchasing and use of their guns. (*Id.*, at 3, 9). Therefore, the Second Amendment Foundation and the National Rifle Association contend that Sig Sauer's customers' information should not be divulged because of the customers' reasonable expectation of privacy that comes with the purchase of their firearms. (*Id.*, at 25).

But while the amici brief supplements Sig Sauer's argument, we find those contentions to be unpersuasive in the context of a motion for reconsideration. Sig Sauer largely relies on the same cases while making

the same argument in its motion for reconsideration that the Court previously considered when making its original ruling,[2] and although the amici curiae add further context to Sig Sauer's contention, they fail to identify any case law that suggests a correction to a "clear error of law." Indeed, the amici brief suggests otherwise. *See* (Doc. 121, at 13, 17) ("Amici concede the case law on the specific question of privacy in gun ownership is not yet developed" and "Amici concede that certain federal cases have been less friendly to thirty party privacy claims."). Moreover, Sig Sauer cannot escape our finding that the customers' information is both relevant and discoverable information. We stated during the discovery conference that whether this information is admissible at trial has not been decided, and at this point, it is relevant for discovery

---

[2] Sig Sauer relies heavily on *Miller v. Evenflo Company, Inc.*, No. 09-CV-108, 2010 WL 11566246 at \*2 (W.D. Pa. May 6, 2010), which cited the following cases: (1) *In re Eli Lilly & Co., Prozac Prods, Liab. Litig.*, 142 F.R.D. 454, 459 (S.D. Ind. 1992); (2) *Ruiz v. Royer Pharmacy, Inc.*, No. Civ. A 97-CV-4831, 1999 WL 124470, at \*2 (E.D. Pa. Feb. 26, 2999); and (3) *Hall v. Harleysville Ins. Co.*, 164 F.R.D. 172, 173 (E.D. Pa. 1995). As we stated during the telephone conference, however, this instant case is distinguishable from *Evenflo* because *Evenflo* concerned a protective order permitting redactions of customer names and addresses by *agreement* of counsel. The protective order here does not permit a party to withhold or redact customer names or information based upon confidentiality.

purposes only.

Nonetheless, Pennsylvania law is settled in that evidence of other similar incidents is admissible to establish "that a defect or dangerous condition existed or that the defendant had knowledge of that defect." *Lockley v. CSX Transp., Inc.*, 5 A.3d 383, 295 (Pa. Super. 2010). A plaintiff in a strict products liability case may rely on evidence of other similar accidents to prove notice or defectiveness. *See Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983 (Pa. Super. 2005); *Blumer v. Ford Motor Co.*, 20 A.3d 1222 (Pa. Super. 2011). We find that the drop-fire witness names and contact information are relevant to the plaintiffs' defect claims with respect to both notice and proof of defect. Therefore, to the extent that Sig Sauer argues that the disclosure of information presents a "chilling effect on the non-party customers' exercise of their Second Amendment [rights] from the disclosure[,]" we find that contention unpersuasive. For the foregoing reasons, Sig Sauer's motion for reconsideration will be denied.

## II.    Motion for Interlocutory Appeal

Under § 1292(b), a district court may certify an order for interlocutory appeal where: (1) the order "involves a controlling question

of law"; (2) "there is substantial ground for difference of opinion" on that question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The burden is on the moving party to demonstrate that each requirement is satisfied." *Isbell v. Bellino*, 962 F. Supp. 2d 738, 759 (M.D. Pa. 2013). "Even if the statutory conditions are met, the Court may exercise its discretion to decline to certify the order." *Id.*; *see generally Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) ("Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exception' cases while generally retaining for the federal courts a firm final judgment rule."). Upon review of Sig Sauer's motion for certification, we find that it has failed to satisfy its burden in demonstrating all requirements.

We note that the plaintiffs' brief in opposition does not address Sig Sauer's contention that the October 28, 2025, order involves controlling questions of law. *See* (Doc. 92); (Doc. 90). Even so, Sig Sauer has failed to demonstrate a substantial ground for a difference of opinion concerning those questions. Sig Sauer notes that "[t]he existence of conflicting judicial opinions provides support for certification of an appeal," (Doc. 90,

at 11) (citing *In re Chocolate Confectionary Antitrust Litigation*, 607 F. Supp. 2d 701, 706 (M.D. Pa. 2009)), but it has failed to cite legal authority demonstrating a difference of opinion for the question of law it seeks to certify. *See* (Doc. 90). Indeed, as we noted above, the supporting amici brief concedes that "the caselaw on the specific question of privacy in gun ownership is not yet developed" and "that certain federal cases have been less friendly to thirty party privacy claims." *See* (Doc. 121, at 13, 17). Moreover, Sig Sauer contends that the granting of its interlocutory appeal will permit discovery to be conducted more expeditiously and at less expense to the parties because the plaintiffs' proposed depositions will result in "considerable expense to the litigants in time and travel, as well as additional delay in the proceedings." (Doc. 90, at 13). We are not persuaded by Sig Sauer's contention. Although the plaintiffs' proposed depositions may result in additional time and travel expenses, we find that the depositions are necessary to this action and we conclude that they will materially advance the case rather than delay it. In light of this analysis, we find that the moving party, Sig Sauer, has failed to satisfy its burden of demonstrating that all three of the requirements for certification of an interlocutory appeal under § 1292(b) have been met.

## III.   Motion for Protective Order

The scope of discovery in federal court is governed by Federal Rule of Civil Procedure 26. Rule 26 is to be construed liberally. *See Pacitti ex rel. Pacitti v. Macy's*, 193 F.3d 766, 766 (3d Cir. 1999); *see also Cole's Wexford Hotel, Inc. v. Highmark Inc.*, 209 F. Supp. 3d 810 (W.D. Pa. 2016). Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b).

A motion for a protective order is governed by Rule 26(c) of the Federal Rules of Civil Procedure. Rule 26(c) permits "[a] party or any person from whom discovery is sought [to] move for a protective order." Fed. R. Civ. P. 26(c)(1). The Court may, for good cause, issue a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* Sig Sauer, as the party seeking the protective order, bears the burden of persuasion and must demonstrate a "particular need for protection" beyond a "[b]road allegation of harm, unsubstantiated by specific examples or articulated reasoning." *Cipollone v. Liggett Grp. Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Here, Sig Sauer moves to prevent the deposition of its CEO, Ron

Cohen, under the "apex doctrine" (Doc. 95-1, at 11), which "recognizes that depositions of high-level officers severely burden[] those officers and the entities they represent, and that adversaries might use this severe burden to their advantage." *United States ex rel. Galmines v. Novartis Pharms. Corp.*, No. CV 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*, No. 3:13-MD-02436, 2014 WL 3035791, at *2 (E.D. Pa. July 1, 2014) ("Depositions of high level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute.") (citations omitted). In simplest terms, it applies when "those at the top of the company, … really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court." *In re Tylenol*, 2014 WL 3035791, at *2. The doctrine relates to Rule 26 of the Federal Rules of Civil Procedure which mandates for courts to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

When assessing whether the deposition of a high-ranking corporate officer is appropriate, courts in this Circuit consider two factors: "(1) whether the executive has personal, superior, or unique knowledge on the relevant subject; and (2) whether the information can be obtained in a less burdensome way, such as through lower-level employees or other discovery methods." *George v. Pennsylvania Tpk. Comm'n*, No. 1:18-CV-766, 2020 WL 2745724, at *2 (M.D. Pa. May 27, 2020); *Cartagena v. Serv. Source, Inc.*, No. 1:17-CV-742, 2019 WL 355728, at *4 n.3 (M.D. Pa. Jan. 29, 2019); *In re Tylenol*, 2014 WL 3035791, at *3. Here, Sig Sauer argues that Mr. Cohen has no unique, personal knowledge of the case and moreover, the plaintiffs have already obtained the information they seek through other, less burdensome means. (Doc. 95-1, at 13).

Sig Sauer contends that as CEO of Sig Sauer, Mr. Cohen is only involved "in the duties, responsibilities, and oversight concerning the entire organization as opposed to isolated incidents, such as [the plaintiff's] incident." (*Id.*, at 14). But as the plaintiffs note, this action does not concern a singular isolated incident, but rather "a design flaw present in the hundreds of thousands of pre-upgrade P320s that Sig Sauer sold from 2014-2017." (Doc. 103, at 20). Further, during the

conference, plaintiffs' counsel proffered that Mr. Cohen has familiarity with the drop fire vulnerability testing; he made the decision not to recall the P320 pistol; he was present when meetings were held regarding the P320 pistol; and he was the decision-maker. Defense counsel disputed the proffer made by plaintiffs' counsel. We find that this is the type of case in which a company's leader would reasonably be expected to play a central role to warrant a deposition. *See In Re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 6111769, at \*2 (D.N.J. June 22, 2021) (finding that an alleged contamination and recall of a popular pharmaceutical would be "the kind of case that one would expect a company's leader would be playing a leading role."). We are persuaded that Mr. Cohen may possess unique knowledge relevant to the issues being litigated in this action, specifically concerning Sig Sauer's failure to recall the P320 after knowledge of its drop-fire vulnerability. *See* (Doc. 82, at 3–4). As discussed during the telephonic discovery conference between the parties, the only reliable way to determine whether Mr. Cohen has direct knowledge concerning the Sig Sauer's development of the P320 and actions concerning its subsequent recall is through a deposition. Without it, the court would be depriving the plaintiffs of that

essential discovery opportunity. Therefore, we will deny Sig Sauer's motion for a protective order and allow the plaintiffs to depose Mr. Cohen as a fact witness in this case. Also, we will permit Mr. Cohen's deposition to be taken virtually or in person at a time and location convenient to Mr. Cohen within the next forty-five days.

## IV.  Conclusion

For the foregoing reasons, Sig Sauer's motion for reconsideration, request to certify our October 28, 2025, order for interlocutory appeal, and motion for a protective order will be denied.

An appropriate order follows.

Dated: April 21, 2026                    *s/Joseph F. Saporito, Jr.*
                                         JOSEPH F. SAPORITO, JR.
                                         United States District Judge